UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------X

LESLIEANN MANNING,                              :
                                                :
                              Plaintiff,         :
                                                :        15 Civ. 003 (KMK)(PED)
             -against-                           :
                                                :
PATRICK GRIFFIN, et al.,                         :
                                                :
                              Defendants.        :

---------------------------------------------------------------X


**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE AMENDED COMPLAINT**


ERIC T. SCHNEIDERMAN
Attorney General of the
 State of New York
<u>Attorney for Defendants</u>
120 Broadway, 24th Floor
New York, New York 10271
(212) 416-6295


MARIA B. HARTOFILIS
Assistant Attorney General
     <u>of Counsel</u>

AMANDA GLAUBACH
Student Intern

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................... iii

Preliminary Statement.............................................................................................. 1

Statement of Facts .................................................................................................... 2

    A.  Allegations of Rape.......................................................................................... 2

    B.  Allegations Regarding Defendants' Notice of Substantial Risk to Plaintiff................. 3

    C.  Allegations Regarding General Risk of Harm Faced by Transgender Inmates........... 5

ARGUMENT       Standard of Review ................................................................... 5

POINT I             PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM FOR FAILURE TO PROTECT................................................................... 7

    A.  Standard of Review for a Failure to Protect Claim under the Eighth Amendment............................................................................................. 7

    B.   Plaintiff Fails to State a Failure to Protect Claim against Defendants...... 8

        1.  Defendants were not aware of a substantial risk of serious harm to plaintiff............................................................................................. 9

        2.  Defendants were not aware of generalized risk of harm to all inmates at Sullivan ...................................................................... 10

        3.  Alleged Risk of Serious Harm Faced by Transgender Inmates......... 11

            (a)  Supt. Griffin............................................................................. 13
            (b)  Dep. Giglio ............................................................................. 14

        4.  Alleged Lack of Supervision in Sublevel E ...................................... 15

            (a)  C.O. Ladenhauf ...................................................................... 17
            (b)  Sgt. Barlow.............................................................................. 17
            (c)  Peter Cohen ............................................................................ 18
            (d)  Supt. Griffin and Dep. Giglio................................................... 18

        5.  Inmate Williams' Alleged Prior Sexual Assaults ............................. 18

6.   Allegations of Staff Harassment ......................................................... 19

POINT II         PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE THE PERSONAL
INVOLVEMENT OF DEFENDANTS IN ALLEGED
CONSTITUTIONALVIOLATION……………….…………………….…20

A.  Supt. Griffin ............................................................................ 22
B.  Dep. Giglio............................................................................... 23
C.  Captain Urbanski ..................................................................... 24
D.  Sgt. Barlow and C.O. Ladenhauf ............................................ 24
E.  Peter Cohen ............................................................................. 25

CONCLUSION............................................................................................................ 25

# TABLE OF AUTHORITIES

**Cases**                                                                **Page(s)**

Al-Jundi v. Estate of Rockefeller,
   885 F.2d 1060 (2d Cir. 1989)...............................................................................21

Alexander v. Board of Education,
   2015 U.S. Dist. LEXIS 63468 (S.D.N.Y. May 13, 2015)........................................13

Arista Records LLC v. Doe,
   604 F.3d 110 (2d Cir. 2010)...................................................................................7

Ashcroft v. Iqbal,
   556 U.S. 662 (2009).....................................................................................5, 6, 21

Bass v. Jackson,
   790 F.2d 260 (2d Cir. 1986)............................................................................20, 24

Bell Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007)..............................................................................................5, 6

Bellamy v. Mount Vernon Hosp.,
   2009 WL 1835939 (S.D.N.Y. June 26, 2009) ........................................................21

Bellamy v. Mount Vernon Hosp.,
   No. 07 Civ. 1801, 2009 U.S. Dist. LEXIS 54141 (S.D.N.Y. June 26, 2009).........22

Colon v. Coughlin,
   58 F.3d 865 (2d Cir. 1995)..............................................................................20, 21

Coronado v. Goord,
   2000 U.S. Dist. LEXIS 13876 (S.D.N.Y. Sept. 25, 2000)..................................8, 24

De La Rosa v. New York City 33 Precinct,
   2010 WL 1737108 (S.D.N.Y. Apr. 27, 2010)........................................................21

DeJesus v. Coughlin,
   1984 U.S. Dist. LEXIS 23248 (S.D.N.Y. Sept. 27, 1984).....................................15

Eldrige v. Williams,
   2013 U.S. Dist. LEXIS 107555 (S.D.N.Y. July 30, 2013) ....................................23

Fair v. Weiburg,
   2006 U.S. Dist. LEXIS 70183 (S.D.N.Y. Sept. 28, 2006).....................................15

Farmer v. Brennan,
   511 U.S. 825 (1994)................................................................................7, 8, 11, 20

Fernandez v. New York City Dep't of Corr.,
2010 U.S. Dist. LEXIS 29686 (S.D.N.Y. March 29, 2010) .............................8, 10, 15, 16, 17

Goodson v. Wright,
2012 U.S. Dist. LEXIS 122499 (S.D.N.Y. May 23, 2012)........................................................8

Goris v. Breslin,
402 Fed. Appx. 582 (2d Cir. 2010) (Summary Order) .....................................................14, 20

Green v. Bauvi,
46 F.3d 189 (2d Cir. 1995)...............................................................................................21, 24

Grullon v. City of New Haven,
720 F.3d 133 (2d Cir. 2013).....................................................................................................23

Harris v. Mills,
572 F.3d 66 (2d Cir. 2009).........................................................................................................6

Hayes v. N.Y.C. Dep't of Corr.,
84 F.3d 614 (2d Cir. 1996).....................................................................................................7, 8

Helling v. McKinney,
509 U.S. 25 (1993)......................................................................................................................7

Hernandez v. Goord,
312 F. Supp. 2d 537 (S.D.N.Y. 2004).....................................................................................22

JBC Holdings NY, LLC v. Pakter,
931 F. Supp. 2d 514 (S.D.N.Y 2013)...................................................................7, 13, 15, 19

Lojan v. Crumbsie,
2013 U.S. Dist. LEXIS 15590 (S.D.N.Y. Feb. 1, 2013)...........................................11, 12, 13

Monnell v. New York City Dep't of Social Servs.,
436 U.S. 658 (1978)..................................................................................................................21

Parris v. N.Y. State Dep't Corr. Servs.,
947 F. Supp. 2d 354 (S.D.N.Y. 2013)..........................................................................7, 9, 10

Powell v. Schriver,
175 F.3d 107 (2d Cir. 1999)......................................................................................................12

Prince v. Madison Square Garden,
427 F. Supp. 2d 372 (S.D.N.Y. 2006).......................................................................................7

Purcell ex rel. Estate of Morgan v. Toombs County, Ga.,
400 F.3d 1313 (11th Cir. 2005) ...............................................................................................11

Rush v. Fischer,
    923 F. Supp. 2d 545 (S.D.N.Y. 2013)......................................................................14

Zimmerman v. Macomber,
    2001 U.S. Dist. LEXIS 12499 (S.D.N.Y. 2001).............................................7, 16, 17

**United States Constitution**

Eighth Amendment ........................................................................................... Passim

Cruel and Unusual Punishments Clause .....................................................................20

**Federal Statutes**

42 U.S.C.
    § 1983................................................................................................1, 7, 20, 21, 24
    § 15601, et seq. ...................................................................................................5

**Federal Rules**

Rule 8 ...........................................................................................................................6

Fed. R. Civ. P. 8(a)(2).................................................................................................6

Fed. R. Civ. P. 12(b)(6)...........................................................................................1, 2

**Miscellaneous Authorities**

http://www.doccs.ny.gov/faclist.html ........................................................................4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

LESLIEANN MANNING,

                      Plaintiff,            15 CV 003 (KMK)(PED)

       v.

PATRICK GRIFFIN, et al.,

                      Defendants.

-----------------------------------------------------X

## DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO DISMISS THE AMENDED COMPLAINT

### Preliminary Statement

Defendants, Patrick Griffin ("Supt. Griffin"), former Superintendent of Sullivan Correctional Facility ("Sullivan"), Dennis Giglio, former Deputy Superintendent of Security at Sullivan ("Dep. Giglio"), Captain Stephen Urbanski ("Captain Urbanski"), Sergeant Brian Barlow ("Sgt. Barlow"), Correction Officer Daniel Ladenhauf ("C.O. Ladenhauf") and Peter Cohen, a teacher at the Sensorially Disabled Program at Sullivan, submit this memorandum of law in support of their motion to dismiss the Amended Complaint ("Am. Compl."), pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiff, Leslieann Manning, a transgender inmate in the custody of the New York State Department of Corrections and Community Supervision ("DOCCS"), brings this action pursuant to 42 U.S.C. § 1983, alleging that the defendants failed to protect her from being sexually assaulted by another inmate on February 5, 2013, while plaintiff was incarcerated at Sullivan.[1] Am. Compl. ¶¶ 1, 6.

---

[1] Defendants will make use of female pronouns in referencing plaintiff, as such is the manner by which plaintiff is referred to throughout the Amended Complaint.

Defendants move to dismiss the Amended Complaint, pursuant to Fed. R. Civ. P. 12(b)(6), on the grounds that (1) plaintiff fails to state a failure to protect claim against the defendants and (2) plaintiff fails to allege defendants' personal involvement in any constitutional violation. If this motion is denied, pursuant to the pre-motion conference held with the Court on April 21, 2015, defendants reserve their right to address plaintiff's failure to exhaust her administrative remedies in this case, as well as defendants' entitlement to qualified immunity, in a motion for summary judgment at the close of discovery.

## **Statement of Facts**

### **A. Allegations of Rape**

Plaintiff alleges that on February 5, 2013, she was raped by Ernest Williams ("Williams"), another inmate at Sullivan, while she was working at her job assignment as an Inmate Program Associate. Am. Compl. ¶¶ 27, 29. Plaintiff worked in Sublevel E, "an area of the facility off a main corridor with five rooms aligned down a hallway," which consists of classrooms and an administrative office. Am. Compl. ¶ 25. The classrooms are used to benefit prisoners with disabilities and for sex offender program meetings.[2] Id.

Plaintiff alleges that her supervisor, Peter Cohen, asked her to bring a piece of paper to an inmate who was sitting alone in a classroom, and she complied with the request, "unaware of the prisoner's identity." Id. ¶ 27. When she entered the room, Williams was not visible (he was on the side), so plaintiff proceeded to enter, gave Williams the paper and allegedly said, "here is your paper." Id. ¶ 29. She further alleges that, "[b]efore she could leave," Williams came up behind her and grabbed her neck "with such force that she was unable to scream or resist." Id. Then, he allegedly used his other hand to remove her pants and adult diaper, and he raped her by

---

[2] Significantly, plaintiff does not allege that her attacker was a participant in the sex offender program.

penetrating her from behind. Id. After Williams "released her from his grip," he allegedly told plaintiff that "if she told anyone, he would kill her." Id.

Plaintiff alleges that she decided to report the rape on February 7, 2013, two days after the incident. According to plaintiff, after making her report, she was taken to the Catskill Regional Medical Center and was examined by a forensic nurse and two doctors, who found that she "exhibited signs of a sexual assault, including bruising on her neck and abrasions around her anus." Id. ¶ 39. Plaintiff alleges "upon information and belief" that DNA collected from plaintiff was eventually matched to Williams. Id. ¶ 40.

**B. Allegations Regarding Defendants' Notice of Substantial Risk to Plaintiff**

Plaintiff alleges that, prior to the assault, she told Peter Cohen that there was not enough "control" over Sublevel E, and that prisoners could walk through the area as the door was usually unlocked. She also alleges that prisoners would linger in the area, resulting in a high noise volume. Am. Compl. ¶ 26. According to plaintiff, at the time of the alleged incident, C.O. Ladenhauf was the corrections officer responsible for patrolling Sublevel E of Sullivan. Id. He would typically walk through the area at 9:00 a.m., but he did not always return to patrol the area in the afternoon. According to plaintiff, Sergeant Barlow was responsible for supervising the officers in Sublevel E and conducting rounds of the area. Id. ¶ 10. Plaintiff alleges that on the afternoon of the alleged assault, Peter Cohen was the only staff member on Sublevel E. Id. ¶ 28.

Plaintiff also claims that she was harassed by correctional officers and that Supt. Griffin and Captain Urbanski were aware of it. Id. ¶ 62. She alleges that she was harassed on October 31, 2012, and on November 1, 2012, by officers when she was "pinned against the wall" in order to be searched and her breasts were "squeezed." Id. ¶¶ 63-64. Plaintiff alleges that she wrote to Superintendent Griffin about these incidents and subsequently spoke to a sergeant who

investigated the matters.  Id. ¶ 65.  She further alleges that, at the conclusion of the investigation, Captain Urbankski wrote her a letter.  Id.  On December 7, 2012, plaintiff contends that the Cornell LGBT Clinic wrote to Superintendent Griffin regarding the "continuous harassment Ms. Manning suffered at the hands of Correctional Officers, who were making degrading comments about her gender identity." The letter also referenced the October 31, 2012 and November 1, 2012 incidents.  Id. ¶ 66.  On December 18, 2012, Superintendent Griffin replied to the Cornell LGBT Clinic and informed the clinic that Captain Urbanski was in charge of investigating the matter. Superintendent Griffin also wrote to plaintiff on November 14, 2012, regarding the incidents and advised plaintiff that her "future concerns should be addressed to facility officials." Id. ¶ 67.

With respect to her attacker, plaintiff alleges "upon information and belief" that Williams was transferred to Sullivan because he sexually assaulted a prisoner at Woodbourne Correctional Facility.[3]  Id. ¶ 45.  She further alleges that Williams was a "known sexual predator" and therefore should not have been housed in the same block as she because of her vulnerability as a transgender female. Id. ¶¶ 45-47.  Plaintiff claims that, after the incident, another inmate, Martin Fairhust, told her that Williams sexually assaulted him numerous times, both before and after plaintiff was raped.  Id. ¶ 49.  She also claims "upon information and belief" that DOCCS brought disciplinary charges against Williams for at least one of his assaults on Martin Fairhurst; however, she does not claim that this occurred before she was sexually assaulted or that the named defendants were aware of the alleged assaults of Martin Fairhurst or the alleged disciplinary charges. Id. ¶ 49.  Although plaintiff claims that Supt. Griffin and Dep. Giglio knew

---

[3] Sullivan is a maximum security facility, whereas Woodburne is a medium security facility. See http://www.doccs.ny.gov/faclist.html (last visited July 1, 2015).

about Williams's "history of sexual assaults," she fails to specify what they knew or how they knew it.  Id. ¶ 60.

### C. **Allegations Regarding General Risk of Harm Faced by Transgender Inmates**

Plaintiff claims that defendants were aware of the risks transgender female inmates generally face while incarcerated in male prisons.[4]  For example, plaintiff alleges that, because DOCCS has a policy related to transgender inmates, the named defendants were therefore aware that transgender inmates are at risk of harm, even though plaintiff does not allege that the policy itself deals with security measures.  See Am. Compl. ¶ 59.

According to plaintiff, in 2008 and 2009, the Sylvia Rivera Law Project sent the Superintendent of Auburn Correctional Facility ("Auburn"), where plaintiff was housed at the time, letters that explained the risks that transgender female inmates face in male prisons, including increased vulnerability to sexual violence, as well as the risks she specifically faced. Id. ¶¶ 19, 60.  Plaintiff further alleges that, at an unspecified time, the Sylvia Rivera Law Project sent a similar letter to the Superintendent of Sullivan. Although these letters were not sent to Superintendent  Griffin, it is plaintiff's "belief" that advocacy letters are maintained by DOCCS in the prisoner's file which is transferred with the prisoner each time the prisoner is moved to a different correctional facility.  Id. ¶ 21.

### ARGUMENT

### Standard of Review

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A

---

[4] Plaintiff points to the Prison Rape Elimination Act ("PREA"), which Congress passed in 2003 to eliminate sexual assaults in prison.  Am. Compl. ¶ 51; 42 U.S.C. § 15601, et seq.

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (internal quotations and citation omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (internal quotations and citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" Id. at 678-79 (quoting Fed. R. Civ. P. 8(a)(2)). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. at 678 (quoting Twombly, 550 U.S. at 555). Further, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. "In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to assumption of truth." Id. at 679; see also Harris v. Mills, 572 F.3d 66, 71-72 (2d Cir. 2009).

Although a plaintiff can "plead facts upon information and belief" in some instances, such as when "the facts are peculiarly within the possession and control of the defendant" or when "the belief is based on factual information that makes the inference of culpability

plausible," <u>Arista Records LLC v. Doe</u>, 604 F.3d 110, 120 (2d Cir. 2010), "such allegations must be accompanied by a statement of facts upon which the belief is founded." <u>JBC Holdings NY, LLC v. Pakter</u>, 931 F. Supp. 2d 514, 526-27 (S.D.N.Y 2013) (<u>quoting</u> <u>Prince v. Madison Square Garden</u>, 427 F. Supp. 2d 372, 384 (S.D.N.Y. 2006)).

## <u>POINT I</u>

### <u>PLAINTIFF FAILS TO STATE AN EIGHTH AMENDMENT CLAIM FOR FAILURE TO PROTECT</u>

**A.  Standard of Review for a Failure to Protect Claim under the Eighth Amendment**

An inmate asserting a § 1983 claim that a prison official failed to protect her from harm in violation of the Eighth Amendment must satisfy both prongs of the test found in <u>Farmer v. Brennan</u>, 511 U.S. 825 (1994).  Under the objective prong, the inmate must show that she was "incarcerated under conditions posing a substantial risk of serious harm."  <u>Farmer</u>, 511 U.S. at 834 (<u>citing</u> <u>Helling v. McKinney</u>, 509 U.S. 25, 35 (1993)) (footnote omitted).  Subjectively, the prison official must have acted with a "sufficiently culpable state of mind."  <u>Farmer</u>, 511 U.S. at 834.  Such culpability exists when "an official has knowledge that that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate it."  <u>Hayes v. N.Y.C. Dep't of Corr.</u>, 84 F.3d 614, 620 (2d Cir. 1996) (<u>citing</u> <u>Farmer</u>, 511 U.S. at 847).  Deliberate indifference does not exist "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  <u>Farmer</u>, 511 U.S. at 837.  Courts routinely deny deliberate indifference claims based upon surprise or isolated attacks. <u>See</u> <u>Zimmerman v. Macomber</u>, 2001 U.S. Dist. LEXIS 12499 at *15 (S.D.N.Y. 2001) (collecting cases); <u>see also</u> <u>Parris v. N.Y. State Dep't Corr. Servs.</u>,

947 F. Supp. 2d 354, 363 (S.D.N.Y. 2013) ("[A] plaintiff must allege that the defendants knew of a history of prior inmate-on-inmate attacks similar to the one suffered by the plaintiff and that the measures they should have taken in response to such prior attacks would have prevented the attack on the plaintiff.").

Claiming that the specific defendants should have known of a substantial risk of serious harm to plaintiff is not enough. Rather, plaintiff must prove the particular defendants actually knew of a substantial risk of serious harm to her. See Goodson v. Wright, 2012 U.S. Dist. LEXIS 122499, at *18 (S.D.N.Y. May 23, 2012) ("[s]ubjectively, however, to plausibly establish his failure to protect claim Goodson must set forth facts demonstrating that the defendants were actually aware of the risk, and not simply that they should have been") (citations omitted). "Mere negligence by a prison officer does not establish a claim for 'deliberate indifference' to prisoner's safety." Fernandez v. New York City Dep't of Corr., 2010 U.S. Dist. LEXIS 29686, at *12 (S.D.N.Y. March 29, 2010); see also Hayes v. New York City Dep't of Corrections, 84 F.3d 614, 620 (2d Cir. 1996) ("mere negligence will not suffice" to state a failure to protect claim under the Eight Amendment).

**B. Plaintiff Fails to State a Failure to Protect Claim against Defendants**

For purposes of this motion, defendants do not dispute that plaintiff has satisfied the objective prong of the Farmer test. Plaintiff, however, has failed to sufficiently allege that any of the defendants were aware of an actual risk of serious harm to plaintiff or a substantial and well-documented risk of sexual attacks at the facility, and thus plaintiff fails to state a claim under the subjective prong of Farmer. See Coronado v. Goord, 2000 U.S. Dist. LEXIS 13876, at *13 (S.D.N.Y. Sept. 25, 2000) ("If Defendants did not know of the risk to Coronado – either by receiving notice of prior attacks and a lingering threat against him personally or by their

awareness that a substantial risk of attacks in the yard was pervasive and well-documented—then they cannot be held liable for failure to protect him under the Eighth Amendment standard."). Therefore, plaintiff's Eighth Amendment claim against defendants should be dismissed.

Plaintiff has failed to identify the actual risk of which defendants should have been aware. Instead, the gravamen of plaintiff's argument is that because she is a transgender female, defendants *should have known* of a substantial risk of serious harm to her. Am. Comp. ¶¶ 22-23. However, plaintiff's transgender status alone is not sufficient; it did not put defendants on notice that she was at specific risk of suffering serious harm from another inmate.

The Amended Complaint contains no allegations that there were any prior sexual assaults of transgender inmates, or inmates of any gender, at Sullivan that would put defendants on notice that plaintiff might be at risk. Plaintiff does not allege that she was personally threatened with being sexually assaulted and reported it to defendants. Plaintiff also fails to provide well-pleaded factual allegations to support her claim that defendants were aware that Williams had sexually assaulted an inmate prior to being transferred to Sullivan and the defendants were aware that Sublevel E was not monitored properly and therefore posed a significant risk to her. Accordingly, plaintiff has failed to allege sufficient facts to establish an Eighth Amendment claim.

### 1. Defendants were not aware of a substantial risk of serious harm to plaintiff

Plaintiff has failed to allege any facts that support her claim that defendants had notice that plaintiff was at risk of sexual assault either by inmate Williams or by any other inmate. It is well settled that in order to state a claim for deliberate indifference based on allegations of failure to protect, plaintiff "must allege that the defendants knew of a prior altercation between the plaintiff and his attacker, or of threats that had been made against plaintiff." Parris, 947 F.

Supp.2d at 363 (citing Fernandez, 2010 U.S. Dist. LEXIS 29686, at *11-12) (dismissing inmate's deliberate indifference claim because he failed to state facts from which a court could reasonably infer that any correction officer had knowledge of a risk to plaintiff; inmate failed to plead that he was involved in a prior altercation with his attacker, that his attacker had previously threatened him, or that there was any other reason for correction officers to be on notice that there was a risk of altercation between plaintiff and his attacker).

Plaintiff does not claim that defendants knew of a prior altercation between herself and her attacker or that he ever threatened her. In fact, although plaintiff claims that her attacker "exposed himself to her in a harassing manner" months prior to the incident, she concedes that she did not report this incident. Am. Compl. ¶ 46. Because plaintiff failed to allege that defendants had knowledge of a substantial risk to plaintiff and disregarded that risk, plaintiff's deliberate indifference claim should be dismissed.

### 2. Defendants were not aware of generalized risk of harm to all inmates at Sullivan

Plaintiff also fails to adequately allege that defendants were aware of a substantial generalized risk of harm to all inmates in plaintiff's situation. See Parris, 947 F. Supp. 2d at 363 (dismissing inmate's failure to protect claims against defendant officers where inmate failed to allege "a history of serious inmate-on-inmate assaults" in the area where the inmate was attacked, "that the defendants knew of any such history, or that such prior assaults were similar enough to the attack he suffered that remedial actions would have prevented the attack"). Plaintiff has not alleged a history of inmate sexual assaults in the Sublevel E area of Sullivan or any other area of the facility and that defendants were aware of such sexual assaults. With the exception of the attacks inmate Fairhurst allegedly suffered at the hands of inmate Williams, which plaintiff does not allege the nature of, and whose timing is not clear, plaintiff fails to

allege that other inmates were physically or sexually attacked at Sullivan in general population or on Sublevel E specifically. Similarly, plaintiff fails to allege that defendants knew of any inmate attacks, or that the prior attacks were similar enough to the attack that plaintiff suffered that remedial actions would have prevented the attack. Therefore, since there are no allegations of "a substantial risk of inmate attacks [that] was longstanding, pervasive, well-documented, or expressly noted by prison official in the past," plaintiff has failed to allege that defendants were deliberately indifferent in failing to protect her from a substantial general risk of harm. Farmer, 511 U.S. at 842-843.

### 3. Alleged Risk of Serious Harm Faced by Transgender Inmates

Although plaintiff claims that all of the defendants were on notice of her heightened vulnerability to sexual assault as a transgender woman and points to several laws and studies to support her allegations (Am. Compl. ¶¶ 51-59, 71-72), these general statements are insufficient to state an Eighth Amendment failure to protect claim. "In the jail setting, a risk of harm to some degree always exists by the nature of it being a jail." Purcell ex rel. Estate of Morgan v. Toombs County, Ga., 400 F.3d 1313, 1323 (11th Cir. 2005). Plaintiff fails to allege that specific defendants were aware of these laws and studies, but, even if they were aware, plaintiff fails to allege that defendants were deliberately indifferent to a generalized risk of plaintiff's safety. Plaintiff's general allegations about transgender inmates nationwide do not suffice. Significantly, there are no allegations that other transgender inmates were sexually attacked at Sullivan in order to put defendants on notice that plaintiff might be at risk.

Defendants recognize that in Lojan v. Crumbsie, 2013 U.S. Dist. LEXIS 15590 (S.D.N.Y. Feb. 1, 2013), in denying a motion to dismiss the transgender plaintiff-inmate's failure to protect claim, the court stated that "[a]s an initial matter, the argument that more than mere

knowledge of Plaintiff's transgender status was required to put Defendant on notice of Plaintiff's vulnerability spurious." Id. (citing Powell v. Schriver, 175 F.3d 107, 115 (2d Cir. 1999)). However, in Lojan, unlike here, the corrections officials had much more than "mere knowledge of plaintiff's transgender status." They had specific information upon which they acted, that plaintiff was subject to a known risk of harm.

First, unlike plaintiff in our case who resided in the general population at the time of the alleged rape (Am. Compl. ¶ 24), the plaintiff in Lojan was placed in strict protective custody as soon as she arrived at the Westchester County Jail ("WCJ") after she disclosed her transgender status. Lojan, 2013 U.S. Dist. LEXIS 15590 at *3. Thus, plaintiff's placement in strict protective custody was a recognition by the defendants in Lojan that she was a "likely victim." In fact, the Lojan court itself noted that the defendants could not claim the harm was not reasonably foreseeable based on "the WCJ's decision to place Plaintiff in special protective custody immediately following intake." Id. at *14. Here, plaintiff does not allege that she asked for protective custody at Sullivan or that she was offered protective custody by any of the defendants or the Sullivan administration.

Second, plaintiff in Lojan was approached by a WCJ officer who informed her that she could request a transfer from strict protective custody to protective custody, "which would provide equivalent protection but allow additional freedom of movement." Lojan, 2013 U.S. Dist. LEXIS 15590, at *3. Shortly after Lojan was transferred, she was sexually assaulted in her cell by an inmate who was serving as "trustee"[5] of the prison.[6] Id. at *3-4. The investigation conducted by the WCJ Special investigations unit after the assault, revealed that the attacker had

---

[5] In ruling on a later motion, the court elaborated on the attacker's role and explained that he was "an inmate assigned to walk around and check on the inmates housed in the psych blocks." Lojan, 2014 U.S. Dist. LEXIS 165637, at *6 (S.D.N.Y. Oct. 6, 2014) (internal quotations and citations omitted).
[6] This is significant because the Chief Administrative Officer determines the degree of supervision of a trustee.

a "history of violent behavior and gang affiliation." Id. at *5.  In Lojan, the defendants allowed the attacker to access plaintiff's cell even though they were aware of her vulnerable status, having placed her in a restricted unit.  In this case, plaintiff was not removed from any protected housing unit or sent to a less restricted area prior to the alleged sexual assault. Accordingly, plaintiff has failed to sufficiently allege that any of the defendants were deliberately indifferent to her safety based on her transgender status.

### (a) Supt. Griffin

Although plaintiff alleges that Supt. Griffin was aware that she was a transgender woman, just knowing this information is not sufficient to put him on notice of a substantial risk of serious harm to her for the reasons discussed above.  Am. Compl. ¶ 23.  Additionally, plaintiff alleges numerous times throughout the Amended Complaint that her file contains significant paperwork related to her transgender identity and claims that these letters put Supt.  Griffin on notice of the significant risk of harm she faced.  Id. ¶¶ 20-21, 23, 60, 66.  However, most of plaintiff's allegations regarding the letters are made "upon information and belief," and she fails to allege facts to support that belief.  See JBC Holdings NY, LLC, 931 F. Supp. 2d at 526-27; see also Alexander v. Board of Education,  2015 U.S. Dist. LEXIS 63468, at *7 (S.D.N.Y. May 13, 2015) (holding that pleadings "must contain something more than…a statement of facts that merely creates a suspicion [of] a legally cognizable right of action").  Plaintiff has not alleged that Supt. Griffin knew that the information was in plaintiff's file, that he read the contents of her file, or that there was a longstanding policy at the facility that required him to carefully read all inmates' files.

Moreover, as per the Amended Complaint, most of the letters written by others about plaintiff were not sent to Supt. Griffin directly; he only received a letter on December 7, 2012,

from the Cornell LGBT Clinic regarding the harassment plaintiff allegedly suffered at the hands of correctional officers at Sullivan. Am. Compl. ¶¶ 23, 66. Plaintiff also claims she wrote to the Superintendent after the alleged harassment by staff. Id. ¶ 66. However, this letter did not put Supt. Griffin on notice that plaintiff was at risk of being sexually assaulted by another inmate based on her transgender status. The letter only referenced the alleged harassment plaintiff suffered at the hands of correctional officers and thus would not put Supt. Griffin on notice that Williams posed a substantial risk of serious harm to plaintiff. Furthermore, Supt. Griffin responded reasonably to the allegations by forwarding the letters to the appropriate individual in the administration for investigation and response. Am. Compl. ¶ 67; see also Goris v. Breslin, 402 Fed. Appx. 582, 584 (2d Cir. 2010) (Summary Order) (concluding that there was a lack of personal involvement where supervisory defendant's personal involvement was limited to the receipt of two letters from plaintiff, which he promptly referred to individuals for investigation and response); Rush v. Fischer, 923 F. Supp. 2d 545, 552 (S.D.N.Y. 2013) ("personal involvement has not been shown where a supervisor's only response to an inmate's complaint is to refer the complaint to the appropriate staff for investigation").

### (b) Dep. Giglio

The conclusory allegations with respect to Dep. Giglio also fail to state an Eighth Amendment claim. Id. ¶ 61 There are no allegations that Dep. Giglio personally received any letters regarding any risk to plaintiff based on her transgender status or that he was actually aware of any risk to plaintiff, by correctional staff or the inmate population. Allegations based upon "information and belief" that Dep. Giglio was informed of the "especially dangerous situation of transgender female prisoners housed in male facilities" and that he was "aware of the letters and advocacy requests … alerting the prison to these risks" (Am. Compl. ¶ 61) are

insufficient to establish the required subjective culpable intent for an Eighth Amendment violation. <u>See</u> <u>JBC Holdings NY, LLC</u>, 931 F. Supp. 2d at 526-27. Accordingly, the claim against Dep. Giglio should be dismissed.

### 4. Alleged Lack of Supervision in Sublevel E

Plaintiff does not allege that she alerted any of the defendants that she feared for her safety in Sublevel E. <u>See</u> Am. Compl. Plaintiff's claim that prior to the incident she told Peter Cohen that "there was not enough control" over Sublevel E did not put him, or any of the defendants, on notice that she was at risk of being sexually assaulted. <u>Id.</u> ¶ 26. Plaintiff does not allege that she told Peter Cohen, or any other defendant that she felt "unsafe" in the area; instead she alleges that prisoners could walk through the area and would linger, "resulting in a high noise volume." <u>Id.</u> Even though plaintiff alleges that Sublevel E was "unmonitored," there are no allegations that she informed any defendants that she was afraid for her safety, that she filed a grievance, or that she requested a job assignment transfer. Significantly, she worked in Sublevel E for six months before the alleged incident occurred. <u>Id.</u> ¶ 24. Therefore, plaintiff fails to allege defendants' deliberate indifference to a substantial risk of serious harm to plaintiff. <u>See</u> <u>Fair v. Weiburg,</u> 2006 U.S. Dist. LEXIS 70183, at *15-16 (S.D.N.Y. Sept. 28, 2006) (dismissing inmate's failure to protect claims against defendant officers where the inmate failed to inform defendants hat he feared for his safety); <u>DeJesus v. Coughlin</u>, 1984 U.S. Dist. LEXIS 23248, at *9 (S.D.N.Y. Sept. 27, 1984) (inmate-plaintiff failed to sufficiently allege deliberate indifference where he did not allege that "he had raised a specific complaint to prison authorities thereby supplying defendants with notice that plaintiff feared for her personal safety").

In <u>Fernandez</u>, plaintiff-inmate alleged that he was attacked from behind, by another inmate, while he was brushing his teeth in the bathroom of the "dorm" area. 2010 U.S. Dist.

LEXIS 29686, at * 3. He further alleged that the area was unmonitored at the time of the assault and the correction officer was "joking around with other officers"; when the correction officer saw the altercation she separated the two inmates and then removed the attacker from the dorm area. Id. at *3-4. Plaintiff-inmate claimed that the absence of officers in the dorm area posed a "substantial risk of serious harm to inmate safety." Id. at *10. Like the present case, there were no allegations in Fernandez that the inmate and his attacker were involved in a prior altercation, that the attacker had previously threatened the inmate, or that there was any other reason for the officers to be on notice that there was a risk of altercation between the inmate and his attacker. Id. at *11-12. The court in Fernandez held that the allegation regarding the area being unmonitored "at most supports a claim of negligence" against the officer for failing to station herself at her assigned area, which does not establish a claim for deliberate indifference to a prisoner's safety. Id. at *11 (citing Zimmerman, 2001 U.S. Dist. LEXIS 12499, at * 20 (holding that, where officer did not have knowledge of substantial risk to inmate's safety, "his failure to station himself at the officer's desk does not raise a constitutional question")).

Similarly, plaintiff's allegation that using the classrooms in Sublevel E for sex offender meetings was a "deliberate disregard of the notice Defendants had about heightened security risks to transgender prisoners" does not constitute  knowledge of a substantial risk to plaintiff. Am. Compl. ¶ 25. Significantly, plaintiff does not allege that her attacker was a convicted sex offender or that the sexual assault occurred while a sex offender meeting was in session. See Am. Compl. Thus, the allegation that Sublevel E was used for sex offender meetings is just a red herring to distract the Court from the fact that the plaintiff cannot establish that the defendants had notice of any kind of a specific risk to plaintiff.

**(a) C.O. Ladenhauf**

Plaintiff fails to allege that C.O. Ladenhauf was aware that plaintiff faced a substantial risk of being sexually assaulted by another inmate in Sublevel E.  Plaintiff alleges that at the time of the assault C.O. Ladenhauf was assigned to patrol Sublevel E and explains the procedure he was expected to follow.  Am. Compl. ¶¶ 10, 26.  Plaintiff does not claim that that assault would have been prevented if C.O. Ladenhauf had been in the area, that C.O. Ladenhauf knew about Williams's "reputation," or that plaintiff expressed her concerns about the lack of control on sublevel E to C.O. Ladenhauf.  Plaintiff does not adequately allege that C.O. Ladenhauf had knowledge that plaintiff was at risk of suffering serious harm; she only alleges that he was in charge of monitoring the area, but was not there at the time of the alleged assault.  Although this may be characterized at most as negligence, "mere negligence by a prison officer does not establish a claim for 'deliberate indifference' to prisoner's safety."  Fernandez,  2010 U.S. Dist. LEXIS 29686, at *12; see also Zimmerman, 2001 U.S. Dist. LEXIS 12499, at *20.

**(b) Sgt. Barlow**

Similarly, plaintiff does not allege that Sgt. Barlow had any knowledge of any risk of harm to plaintiff, let alone a substantial risk of harm.  The only reference to Sgt. Barlow in the Amended Complaint is in the "Parties" section in which plaintiff alleges that Sgt. Barlow was responsible for supervising the officers and prisoners in Sublevel E and was also responsible for conducting rounds of the area. Am. Compl. at ¶ 10.   Accordingly, at most, plaintiff has alleged that he was negligent, not that he had the culpable intent necessary to sustain a claim of failure to protect, and thus plaintiff's claim against Sgt. Barlow should be dismissed.

### (c) Peter Cohen

Plaintiff fails to allege that Peter Cohen had knowledge of a substantial risk to plaintiff's safety. Although plaintiff alleges that she told him that "there was not enough control over the area" prior to the incident, this did not put him on notice that she was at risk of suffering serious harm. Am. Compl. ¶ 26. As discussed above, plaintiff does not allege that she told Peter Cohen that she "feared for her safety." Instead, she alleges that Sublevel E could get noisy because inmates would frequent it. Id. Plaintiff does not allege that Peter Cohen knew about Williams's "reputation," that he knew about the alleged earlier harassment of plaintiff by Williams, that Peter Cohen knew that plaintiff was subjected to any prior altercations of threats, or that he knew of a history of inmate-on-inmate attacks at Sullivan similar to the one allegedly suffered by plaintiff. Thus, plaintiff's failure to protect claim against Peter Cohen should be dismissed.

### (d) Supt. Griffin and Dep. Giglio

Plaintiff's allegations that "upon information and belief" Supt. Griffin and Dep. Giglio "knew about the routine lack of adequate supervision in the sublevel area where Ms. Manning was raped" are insufficient to state a failure to protect claim. Am. Compl. ¶¶ 60, 61. These allegations are conclusory, and lack facts to support the allegation regarding lack of adequate supervision. Plaintiff does not allege how Supt. Griffin and Dep. Giglio knew about the alleged "lack of supervision" of Sublevel E. Furthermore, there are no allegations to support the conclusory statement that there was a lack of supervision. Accordingly, plaintiff has failed to state a failure to protect claim against Supt. Griffin and Dep. Giglio.

### 5. Inmate Williams's Alleged Prior Sexual Assaults

Plaintiff alleges that defendants acted with deliberate indifference to her safety by allowing her attacker, a "sexual predator," to live in the same block as her. Am. Compl. ¶ 47.

However, this argument lacks merit because the alleged assault occurred where plaintiff worked, not in her cell. <u>Id.</u> ¶ 25. Additionally, although plaintiff claims that her attacker sexually assaulted an inmate at his prior facility, plaintiff does not adequately allege that defendants knew about this. <u>Id.</u> ¶ 48. Instead, she claims that "upon information and belief, Williams had a reputation of engaging in threatening and harassing behavior" (<u>Id.</u> ¶ 45), and "upon information and belief" he sexually abused a prisoner at his prior facility. <u>Id.</u> ¶ 48. Supt. Griffin's and Dep. Gigio's alleged awareness of Williams's history of sexual assaults is also based upon "information and belief." <u>Id.</u> ¶¶ 60, 61. Since plaintiff does not support her conclusory allegations with any facts, she has failed to state an Eighth Amendment claim. <u>See</u> <u>JBC Holdings NY, LLC</u>, 931 F. Supp. 2d at 526-27.

Although plaintiff claims, that after she was sexually assaulted, Martin Fairhurst, another inmate at Sullivan, informed her that he was also sexually assaulted by Williams, and "upon information and belief DOCCS lodged disciplinary charges against Ernest Williams for one or more" of those assaults, defendants still were not on notice of a specific risk to plaintiff. Am. Compl. ¶ 49. Plaintiff does not allege that Williams was disciplined for sexually assaulting Fairhurst before she was assaulted. Even if Williams was disciplined before he assaulted plaintiff, plaintiff does not allege that any of the defendants were involved in the disciplinary proceedings or how defendants would have become aware of the discipline. <u>Id.</u> Accordingly, since plaintiff does not allege any facts to support her "belief" that defendants were aware that Williams posed a substantial risk to plaintiff, the Amended Complaint should be dismissed on this ground as to all of the defendants.

### 6. Allegations of Staff Harassment

Plaintiff has failed to sufficiently allege that Supt. Griffin and Captain Urbanksi were aware of a substantial risk of serious harm to plaintiff based on receiving complaints of alleged staff harassment. It is well established that a Section 1983 plaintiff must "allege a tangible connection between the acts of the defendant and the injuries suffered." Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). Plaintiff has failed to do so here because there is no apparent connection between allegations that staff "squeezed" plaintiff's breasts during a pat frisk and an unforeseen rape by an inmate.

In addition, plaintiff acknowledges that Supt. Griffin forwarded his complaint of staff harassment for investigation; Captain Urbanski investigated the matter and then wrote plaintiff a letter at the conclusion of the investigation. Id. ¶¶ 65, 67; see also Goris, 402 Fed. Appx. at 584 (concluding that there was a lack of personal involvement where supervisory defendant's personal involvement was limited to the receipt of two letters from plaintiff, which he promptly referred to individuals for investigation and response). Plaintiff fails to allege that the investigation was flawed, or that it was conducted in an unreasonable manner. See Farmer, 511 U.S. 825, 845 ("Whether one puts it in terms of duty or deliberate indifference, prison officials who act reasonably cannot be found liable under the Cruel and Unusual Punishments Clause."). Accordingly, plaintiff's failure to protect claim against Supt. Griffin and Captain Urbanski on this ground should be dismissed.

## POINT II

## PLAINTIFF FAILS TO SUFFICIENTLY ALLEGE THE PERSONAL INVOLVEMENT OF DEFENDANTS IN ALLEGED CONSTITUTIONAL VIOLATION

Personal involvement of an individual defendant in the alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. Colon v. Coughlin, 58 F.3d 865, 873 (2d

Cir. 1995). When monetary damages are sought under § 1983, the general doctrine of *respondeat superior* does not suffice and a showing of personal responsibility of the defendant is required. See Monnell v. New York City Dep't of Social Servs., 436 U.S. 658, 694 (1978); Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989); see also Ashcroft v. Iqbal, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to § 1983 suits, a plaintiff must plead that each Government official defendant, through the official's own individual actions, has violated the Constitution."). "There is no respondeat superior liability in §1983 cases." Green v. Bauvi, 46 F.3d 189, 194 (2d Cir. 1995) (citing Monnell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978)).

Thus, to prevail on a claim against a supervisor, a plaintiff must demonstrate that the supervisor (1) directly participated in the alleged constitutional violation; (2) failed to remedy the wrong after learning of such wrong through a report or an appeal; (3) created or continued a policy or custom under which unconstitutional practices occurred; (4) was grossly negligent in supervising subordinates who committed the wrongful act; or (5) exhibited deliberate indifference to the plaintiff's rights by failing to act on information indicating that unconstitutional acts were occurring. See Colon, 58 F.3d at 873. Moreover, in light of the Supreme Court's decision in Ashcroft v. Iqbal, 556 U.S. 662 (2009), some district courts in New York have held that at least some of the Colon factors no longer apply. See, e.g., De La Rosa v. New York City 33 Precinct, 2010 WL 1737108, at *4 (S.D.N.Y. Apr. 27, 2010); Bellamy v. Mount Vernon Hosp., 2009 WL 1835939, at *6 (S.D.N.Y. June 26, 2009).

Whether analyzed under the Colon factors or some courts' post-Iqbal analysis, plaintiff fails to sufficiently allege defendants' personal involvement in the failure to protect claim. It is clear that plaintiff is not alleging that any of the defendants participated in the alleged rape. He

also has not put forth any non-conclusory allegations imputing knowledge to defendants of a substantial risk of harm to plaintiff or of a high-level risk to the inmates at Sullivan in general.

In addition, plaintiff fails to allege any facts related to the third, fourth and fifth Colon factors. As discussed at length above, plaintiff fails to sufficiently allege that defendants exhibited deliberate indifference by failing to act on information that unconstitutional acts were occurring. Although plaintiff points to various studies about transgender inmates nationwide, she fails to allege any prior incidents at Sullivan that indicate defendants created or continued a policy or custom under which unconstitutional practices occurred. Moreover, plaintiff does not provide any non-conclusory and factually supported allegations that the supervisory defendants (Supt. Griffin, Dep. Gigio, Captain Urbanski and Sgt. Barlow) were grossly negligent in supervising their subordinates. Since there are no allegations to support plaintiff's claims that any of the supervisory defendants had knowledge of a substantial risk to plaintiff or a high-level risk to all inmates in Sullivan, or that any of the staff was not performing their duties, they cannot be grossly negligent of failing to supervise their subordinates.

## A.  Supt. Griffin

Plaintiff fails to adequately allege that Supt. Griffin failed to remedy a wrong after learning of such wrong through a report or appeal. Aside from the letter plaintiff sent Supt. Griffin alerting him of the sexual harassment incidents involving correctional officers, plaintiff never filed a complaint or informed any official that she feared for her safety. Am. Compl. ¶¶ 65-67; see Bellamny, 2009 U.S. Dist. LEXIS 54141, at *21 ("[t]he allegation that plaintiff sent defendant letters complaining of prison conditions is not enough to allege personal involvement") (citation and internal quotation marks omitted); Hernandez v. Goord, 312 F. Supp. 2d 537, 547 n.6 (S.D.N.Y. 2004) (plaintiff had no claim where he merely asserted that supervisor

received letters of complaint).  As the Southern District has held, "if a supervisor merely received information of unconstitutional acts but reasonably acted upon it such as by "forward[ing] [a complaint] to [a] subordinate for investigation and response," that does not establish personal involvement under <u>Colon</u>."  <u>Eldrige v. Williams</u>, 2013 U.S. Dist. LEXIS 107555, at *15 (S.D.N.Y. July 30, 2013) (<u>citing</u> <u>Grullon v. City of New Haven</u>, 720 F.3d 133, 140-41 (2d Cir. 2013)).  Upon receipt of plaintiff's letter alleging harassment by staff, Supt. Griffin forwarded the letter for investigation and an investigation was conducted.  Thus, Supt. Griffin's personal involvement in any alleged constitutional violation cannot be established based on his receipt of the letter.

**B.  Dep. Giglio**

Plaintiff's allegations against Dep. Giglio essentially mirror her allegations against Supt. Griffin, but are even less specific because the former never received any correspondence from plaintiff.  Am. Compl. ¶¶ 60-61.  Plaintiff fails to allege any facts showing that Dep. Giglio was even aware that a potential "wrong was occurring."  Plaintiff tries to allege Dep. Giglio's personal involvement by claiming that "upon information and belief" he knew about the routine lack of adequate supervision in the area where she worked and knew about Williams's history of sexual assaults.  Am. Compl. ¶ 61.  However, as discussed previously, this allegation is not based on any specific facts and thus is not sufficient to state a claim.  Relatedly, plaintiff's allegation that Dep. Giglio was "informed of the especially dangerous situation of transgender female prisoners housed in make facilities, like Sullivan" is also based on plaintiff's "belief." <u>Id.</u> Absent a non-conclusory allegation that Dep. Giglio actually knew of a substantial risk of serious harm to plaintiff or to all inmates at Sullivan, there is no personal involvement by Dep. Giglio in a constitutional violation.

### C. **Captain Urbanski**

Plaintiff's allegations against Captain Urbanski only relate to the harassment plaintiff allegedly suffered at the hands of the correctional officers; she claims that Captain Urbanski knew about and inadequately addressed the alleged harassment by staff. Am. Compl. ¶¶ 65, 67-68. Aside from claiming that the harassment was inadequately addressed, plaintiff does not allege that she filed another complaint or expressed any concern regarding her safety from inmate assaults to Captain Urbanski or to any other prison official. Plaintiff fails to allege any "tangible connection" between the alleged sexual harassment by staff and the sexual assault perpetrated by Williams. See Coronado, 200 U.S. Dist. LEXIS 13876 at *15-16 (citing Bass, 790 F.2d at 263). Thus, there is no personal involvement by Captain Urbanski in any constitutional violation.

### D. **Sgt. Barlow and C.O. Ladenhauf**

Plaintiff's only allegation against Sgt. Barlow is that he was the sergeant assigned to area that encompassed Sublevel E at Sullivan. Am. Compl. ¶ 10. Plaintiff claims that he was responsible for a number of things including supervising the officers and prisoners in his area, making sure officers followed the rules and attended to their job duties, conducting rounds of the area and reading logbooks, and making visual inspections of the area to make sure that prisoners behaved appropriately. Id. Clearly, plaintiff bases Sgt. Barlow's personal involvement solely on the fact that he was in charge; in other words, she alleges that he is liable under a theory of respondeat superior, which does not exist in § 1983 cases. See Green, 46 F.3d at 194. Plaintiff's only allegation regarding C.O. Ladenhauf's personal involvement is that he was assigned to patrol the area where the alleged rape occurred and that at the time of the assault, the only staff member in the area was Peter Cohen. Am. Compl. ¶¶ 10, 26, 28. Accordingly, plaintiff's

claims against Sgt. Barlow and C.O. Ladenhauf must be dismissed for lack of personal involvement.

**E.  Peter Cohen**

Plaintiff's only allegation against Peter Cohen is that, prior to the alleged rape, plaintiff told him that she did not think there was enough control over the area where they worked, prisoners were free to come and go, and prisoners often gathered and as a result it was often loud.  Am. Compl. ¶ 26.  However, plaintiff does not claim that she expressed any fear to Peter Cohen of being physically or sexually assaulted.  Plaintiff also does not allege that Peter Cohen was aware of any prior threats to plaintiff, assaults of plaintiff, or a history of inmate-on-inmate assaults at Sullivan. Thus, plaintiff cannot claim that Peter Cohen failed to remedy a wrong (if it can be characterized as a wrong and if he was the person responsible for remedying it) or that he failed to act on information indicating that unconstitutional acts were occurring.  Accordingly, plaintiff's claim against Peter Cohen must be dismissed for lack of personal involvement.

**CONCLUSION**

For the reasons set forth above, defendants respectfully request that the Court dismiss the Amended Complaint in its entirety.

Dated: New York, New York
      July 1, 2015

          Respectfully submitted,
          ERIC T. SCHNEIDERMAN
          Attorney General of the State of New York
          Attorney for Defendants
          /s *Maria Barous Hartofilis*
          _____
          MARIA B. HARTOFILIS
          Assistant Attorney General
          120 Broadway - 24th Floor
          New York, New York 10271
          (212) 416-6295