IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------------------x
                                           :

**LESLIEANN MANNING,**                          :

                    Plaintiff,           :

                                             :

v.                                        :

                                         :

**PATRICK GRIFFIN**, Superintendent, Sullivan Correctional  :     15-cv-003 (KMK)(PED)
Facility;                                       :
**DENNIS GIGLIO**, Deputy Superintendent for Security,     :
Sullivan Correctional Facility;                     :
**STEPHEN URBANSKI,** Captain, Sullivan Correctional Facility  :
**PETER COHEN**, Instructor, Sullivan Correctional Facility;    :
**BRIAN BARLOW**, Correctional Sergeant, Sullivan Correctional  :
Facility;                                       :
**DANIEL LADENHAUF**, Correctional Officer,           :
Sullivan Correctional Facility,                  :

                                         :
                   Defendants.        :
----------------------------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Betsy Ginsberg, Esq.
Cardozo Civil Rights Clinic
Attorney for Plaintiff
Benjamin N. Cardozo School of Law
55 5th Avenue, 11th Floor
New York, NY 10003
(212) 790-0871
Betsy.ginsberg@yu.edu

Susan Hazeldean, Esq.
Cornell LGBT CLinic
Attorney for Plaintiff
Cornell Law School
149 Myron Taylor Hall
Ithaca, NY 14853
(607) 254-4765
shazeldean@cornell.edu

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES…………………………………………………………….…..ii

Preliminary Statement…………………………………………………………...……….1

Statement of Facts………………………………………………………………..………2

ARGUMENT………………………………………….…..……………………….………5

**I.    PLAINTIFF HAS ALLEGED AN EIGHTH AMENDMENT CLAIM
       AGAINST DEFENDANTS**………………………………..…………………….…..6

  **A. Under Farmer's Deliberate Indifference Standard, Plaintiff Has
      Pleaded Ample Facts in Support of Defendants' Subjective
      Awareness That She Was Subject to a Substantial Risk of Harm**…………..……7

    1. Plaintiff Has Alleged Facts in Support of Defendants' Awareness That She
       is Transgender and of the Risks Inherent in Housing a Transgender Woman
       in a Men's Maximum Security Prison………………………………………..8

    2. Plaintiff Has Alleged Facts in Support of Defendants' Awareness of the
       Lack of Security in Sublevel E……………………………………………11

    3. Plaintiff's Allegations of Facts Evincing Defendants' Knowledge of
       Ernest William's Violent Disposition Supports Her Claim of Deliberate
       Indifference…………………………………………………………………..13

    4. Plaintiff Alleged That Defendants' Were Put on Notice by Plaintiff's
       Counsel and Other Advocates of Ms. Manning's Vulnerability………..……14

**II.   PLAINTIFF HAS ALLEGED AMPLE FACTS SHOWING THAT EACH
       DEFENDANT WAS DELIBERATELY INDIFFERENT TO A RISK OF
       SERIOUS HARM TO LESLIEANN MANNING**…………………………………15

       A. Defendant Peter Griffin……………………………………………17
       B. Defendant Dennis Giglio……………………………………………19
       C. Defendant Stephen Urbanski………………………………………..21
       D. Defendant Brian Barlow……………………………………………22
       E. Defendant Daniel Ladenhauf………………………………………...23
       F. Defendant Peter Cohen……………………………………………24

CONCLUSION…………………………………………………………………………25

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Arista Records, LLC v. Doe 3,*
  604 F.3d 110 (2d Cir. 2010)……………………………………………………………..5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)…………………………………………………………………..5, 17

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544, (2007)………………………………………………………………...5

*Brown v. Budz,*
  398 F.3d 904 (7th Cir. 2005)…………………………………………………………..6, 13

*Candelaria v. Coughlin,*
  No. 93 CIV. 3212 (RWS), 1997 WL 171256 (S.D.N.Y. Apr. 10, 1997)……………………14

*Clinton v. De La Cruz,*
  No. CV 08-4181-DOC OP, 2012 WL 1247142 (C.D. Cal. Mar. 7, 2012) report and
  recommendation adopted, No. CV 08-4181-DOC OP, 2012 WL 1246584
  (C.D. Cal. Apr. 11 2012)……………………………………………………………....9

*Colon v. Coughlin,*
  58 F.3d 865 (2d Cir. 1995)……………………………………………………...16, 19, 21, 23

*Corbett v. Kelly,*
  No. 97-CV-0682 E, 2000 WL 1335749 (W.D.N.Y. Sept. 13, 2000)…………………...7, 20, 22

*Daniels v. Murphy,*
  No. 3:11-CV-00286 SRU, 2014 WL 3547235 (D. Conn. July 17, 2014)……………………17

*D'Attore v. New York City,*
  No. 10 CIV. 3102 JSR MHD, 2011 WL 3629166 (S.D.N.Y. June 2, 2011) report and
  recommendation adopted as modified, No. 10 CIV. 3102 JSR MHD, 2011 WL 3629018
  (S.D.N.Y. Aug. 17, 2011)………………………………………………………16, 17

*DiFolco v. MSNBC Cable L.L.C.,*
  622 F.3d 104, 111 (2d Cir. 2010)………………………………………………………1

*D'Olimpio v. Crisafi,*
  718 F.Supp.2d 340 (S.D.N.Y.2010)…………………………………………………..17

*Dublin v. New York City Law Dep't,*
  No. 10 CIV. 2971 LAP, 2012 WL 4471306, at *5 (S.D.N.Y. Sept. 26, 2012)…………….1, 8

ii

*Erickson v. Pardus,*
  551 U.S. 89 (2007)………………………………………………………………………5

*Farmer v. Brennan*
  511 U.S. 825 (1994)……………………………………………………………passim

*Fernandez v. New York City Dep't Corrections,*
  No. 08 CV 4294(KMW), 2010 WL 1222017 (S.D.N.Y. Mar. 29, 2010)……………………..12

*Gaston v. Coughlin,*
  249 F.3d 156 (2d Cir. 2001)………………………………………………………..23, 24,  25

*Grullon v. City of New Haven,*
  720 F.3d 133 (2d Cir. 2013)……………………………………………………14, 15, 18, 21

*Hayes v. New York City Dep't of Corr.,*
  84 F.3d 614 (2d Cir. 1996)……………………………………………………7, 12, 14, 15

*Haywood v. Woods,*
  No. 9:01CV0022, 2007 WL 1834641 (N.D.N.Y. June 25, 2007)……………………………15

*Hogan v. Fischer,*
  738 F.3d 509 (2d Cir. 2013)………………………………………………………………5

*Lojan v. Crumbsie,*
  No. 12 CV 0320, 2013 WL 411356 (S.D.N.Y Feb. 1, 2013)……………………………passim

*MacGillivray v. Whidden,*
  No. 3:04CV1523(CFD), 2006 WL 587593 (D. Conn. Mar. 10, 2006)………………………25

*Matthews v. Armitage,*
  36 F.Supp.2d 121 (N.D.N.Y. 1999)………………………………………………………...8

*New York v. Town of Clarkstown,*
  No. 11-CV-0293, 2015 WL 1433299 (S.D.N.Y. Mar. 30, 2015)………………………………6

*Powell v. Schriver,*
  175 F. 3d 107 (2d. Cir.1999)………………………………………………………..passim

*Qasem v. Toro,*
  737 F.Supp.2d 147 (S.D.N.Y.2010)………………………………………………………17

*Sash v. United States,*
  674 F.Supp.2d 531 (S.D.N.Y.2009)………………………………………………………..17

*Sims v. Bowen,*
  No. 96-CV-656 RSP/DRH, 1998 WL 146409 (N.D.N.Y. Mar. 23, 1998)……………………14

*Solivan v. Dart*,
    897 F. Supp. 2d 694 (N.D. Ill. 2012)…………………………………………………...12, 13

*Spagnola v. Chubb Corp*.,
    574 F.3d 64 (2d Cir. 2009)…………………………………………………………..5

*Taylor v. Zerillo*,
    No. 08-CV-1494, 2008 WL 4862690, at *4. (E.D.N.Y Nov. 10, 2008)…………………passim

*Turkmen v. Hasty*,
    789 F.3d 218 (2d Cir. 2015)…………………………………………………………..5, 16

*Walton v. Dawson*,
    752 F.3d 1109 (8th Cir. 2014)…………………………………………………………12, 13

*Warren v. Goord*,
    579 F. Supp. 2d 488 (S.D.N.Y. 2008) aff'd, 368 F. App'x 161 (2d Cir. 2010)…………………7

*Watson v. McGinnis*,
    964 F. Supp. 127 (S.D.N.Y. 1997)…………………………………………………………25

*Williams v. Smith*,
    781 F.2d 319 (2d Cir.1986)…………………………………………………………..20, 22

**United States Constitution**

Eighth
Amendment…………………………………………………………………………...passim

**Federal Rules**

Fed. R. Civ. P. 8(a)(2).................................................................................................. 5

## PRELIMINARY STATEMENT

LeslieAnn Manning is a transgender woman who was brutally raped by an inmate with a history of sexual violence while working in the unmonitored program area, Sublevel E, at Sullivan Correctional Facility ("Sullivan").  Am. Compl. ¶ 1.  This rape occurred because each Defendant knew of but did nothing to abate the risk of sexual assault Ms. Manning faced.  *Id.* Under *Farmer v. Brennan*, a Plaintiff may show that prison officials were deliberately indifferent to a substantial risk of harm "from the very fact that the risk was obvious," or by "inference from circumstantial evidence." The plaintiff may allege that this risk derived from multiple sources combined and she need not show she was likely to be assaulted by a specific prisoner.  Courts interpreting *Farmer* have recognized that direct evidence that prison officials knew of the risk will "rarely be available." *Dublin v. New York City Law Dep't*, No. 10 CIV. 2971 LAP, 2012 WL 4471306, at *5 (S.D.N.Y. Sept. 26, 2012) (citation omitted).

Throughout her Amended Complaint, Ms. Manning has alleged ample facts in support of her claim that each Defendant was deliberately indifferent to her risk of sexual assault. The risk she faced came from multiple sources and can be shown through evidentiary inferences, which at this stage in the proceedings must be drawn in her favor.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).  These sources include the obvious risk stemming from fact that she was a transgender woman in a men's prison; that Defendants knew that Sublevel E was completely unmonitored by security staff; that Defendants were aware of Plaintiff's attacker's history of sexual violence; and the fact that Ms. Manning and others, including her counsel, notified Defendants in writing of her vulnerability to sexual assault.   Because Ms. Manning has alleged facts that would allow the fact-finder to determine that each Defendant had adequate knowledge of the substantial risk of harm she faced, whether from some or all of

1

these sources of risk, Defendants' Motion to Dismiss for failure to state a claim and lack of personal involvement should be denied.

## STATEMENT OF FACTS

Ms. Manning's gender identity and outward appearance have been that of a woman since well before her rape at Sullivan in February 2013. The Department of Community Corrections and Supervision ("DOCCS") has for years been providing Ms. Manning with female hormones, which feminize her body. Am. Compl. ¶ 14, 18. She has breasts, wears female undergarments, has permission to shower privately, and her legal name (used by DOCCS) is a traditionally female one. *Id.* at ¶¶ 16-18. All Defendants were aware that Ms. Manning was a transgender woman. *Id.* at ¶¶ 15-23. In addition to being vulnerable to sexual violence because she is housed in a men's maximum security prison, Ms. Manning is visibly in frail health, as she suffers from numerous health conditions, including HIV, chronic obstructive pulmonary disease, heart disease, hearing loss and incontinence. *Id.* at ¶ 13.

The risk of sexual assault transgender women face in men's prisons is well known. Am. Compl. ¶ 52-59. In 2003 Congress passed the Prison Rape Elimination Act ("PREA") in response to pervasive sexual violence in this country's prisons and jails. *Id.* at ¶ 52. The PREA Commission, which was established by Congress as part of the statute, found in 2009 that transgender women are at a heightened risk of sexual assault in prison and recommended that corrections officials take steps to protect this vulnerable community. *Id.* at ¶ 52. Both the U.S. Department of Justice and the National Institute of Corrections have publicly reported that transgender prisoners are particularly vulnerable to sexual abuse in prison, as have other institutions and individuals, including a 2007 study from the University of California, which found that while the general population of male prisoners had a 4.4% incidence of sexual

assault, the transgender population had a 59% incidence.  *Id.* at ¶¶ 54, 57.  A report by the Sylvia Rivera Law Project presented to DOCCS Superintendents and focusing on transgender prisoners in DOCCS prisons also found pervasive sexual abuse of transgender women by other prisoners in New York. *Id.* at ¶¶ 55-56.  Furthermore, prior to Ms. Manning's rape, correctional systems around the country had already begun to implement policies regarding the safety of transgender prisoners in response to PREA.  *Id.* at  ¶¶ 58-59.

Despite the obvious risk of sexual violence to Ms. Manning, her work assignment was in a part of the prison known as sublevel E, which was known by all of the Defendants to be unmonitored by security staff.  Am. Compl. ¶¶ 25-29.  Ms. Manning alleges that prisoners could walk in and out of this area at will and that she told Defendant Cohen of this lack of safety.  *Id.* at ¶ 26.  Defendant Ladenhauf, who was responsible for patrolling the area, would typically sign the logbook in the morning, remain in the area for a few minutes and then leave. Often he would not even return to patrol in the afternoon.  *Id.*  At and around the time that Ernest Williams raped Ms. Manning, there were no security staff present in the sublevel. Civilian instructor Defendant Cohen was the only staff present.  *Id.* at ¶ 28.

The other Defendants also knew about the lack of security in sublevel E.  Defendant Patrick Griffin, Superintendent of Sullivan, was directly responsible for the prison's security policies and their management and enforcement.  Am. Compl. ¶ 7.  He was also responsible for the assignment and removal of staff as well as their training and supervision.  *Id.* Similarly, Defendant Giglio, then Deputy Superintendent for Security, was responsible for the supervision and safety of staff and prisoners.  Importantly, he was also responsible for decisions concerning security assignments of staff.  *Id.* at ¶ 8.  Defendant Urbanski was one of the two Correctional Captains at Sullivan and was responsible for overseeing security staff and responding to and investigating prisoner complaints about security.  *Id.* at ¶ 9.  Defendant

Barlow, the Sergeant responsible for overseeing security in Sublevel E when the rape occurred, supervised the officers in his area to ensure that they followed rules and regulations and completed their job duties appropriately. *Id.* at ¶ 10. He was also required to make rounds of the area, review log books to ensure that officers were recording in them, and to make visual inspections of this area for security purposes. *Id.* He was responsible for supervising Defendant Ladenhauf, the correctional officer with primary responsibility for security in Sublevel E when Ms. Manning was raped. *Id.* at ¶ 11. As stated above, Defendant Cohen was the only staff member present in Sublevel E when the rape occurred. He knew both from first-hand experience and Ms. Manning's reports, that the sublevel was unmonitored by security staff. *Id.* at ¶¶ 26-28.

Inmate Williams, who raped Ms. Manning was also known to Defendants to be sexually violent toward other prisoners. Am. Compl. ¶¶ 44-50. Ms. Manning alleges that Williams was transferred to Sullivan because he had sexually assaulted a prisoner at another prison. *Id.* at ¶ 48. She also alleges that he sexually assaulted another Sullivan prisoner before he raped her and that DOCCS issued disciplinary charges against Williams based on this previous Sullivan assault. *Id.* at ¶ 49. Despite the fact that he was a known sexual predator, Defendants allowed Williams to attend his program in the unmonitored area where Ms. Manning worked and to be housed on her block. *Id.* at ¶¶ 44, 47. Defendants Griffin and Giglio were aware of Mr. Williams' history of sexual violence. *Id.* at ¶¶ 48, 49, 60, 61.

Plaintiff also alleges that Defendants Griffin and Urbanksi were placed on notice by letters from legal advocates and Ms. Manning herself of the risk of harm she faced as a transgender woman housed in men's prisons. Am. Compl. ¶¶ 62, 68. In December 2012, the Cornell LGBT Clinic, co-counsel in this case, sent a letter to Defendant Griffin, informing him of Plaintiff's fear of sexual abuse and harassment because she was a transgender woman.

Am. Compl. ¶¶ 23, 62-68.  The letter detailed two prior incidents of gender-based harassment involving Sullivan officials and warned that she feared the abuse would worsen and become violent.  *Id.*   Defendant Griffin asked Urbanski to handle the matter, but neither Defendant took any appropriate steps to abate the risk to Ms. Manning. *Id.* at ¶¶ 66-68.  Moreover, other advocates similarly warned DOCCS of the unabated gender-based risks to Ms. Manning's safety by writing letters to DOCCS officials, letters which Plaintiff alleges remained in her file throughout her incarceration, including while at Sullivan.  *Id.* at  ¶¶ 23, 60.

## ARGUMENT

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to give the defendant fair notice of what the ... claim is and the grounds upon which it rests," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  When considering a motion to dismiss for failure to state a claim, the court must "accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  For purposes of a motion to dismiss, "[p]laintiffs need not prove their allegations; they must plausibly plead them." *Turkmen v. Hasty*, 789 F.3d 218, 240 (2d Cir. 2015).  In determining whether a plaintiff has plausibly pleaded a cause of action, a court must draw all reasonable inferences in the plaintiff's favor.  *Spagnola v. Chubb Corp.*, 574 F.3d 64, 67 (2d Cir. 2009) (*citing Iqbal*, 556 U.S. at 678).  A court's duty on a 12(b)(6) motion is to determine the "legal feasibility" of a complaint, not to assess the quality of the evidence.  *Hogan v. Fischer*, 738 F.3d 509, 514 (2d Cir. 2013) (citiation omitted).

Under the *Twombly* and *Iqbal* standard, a plaintiff may plead facts upon information and belief where those facts are "peculiarly within the possession and control of the defendant" or "where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted);

*New York v. Town of Clarkstown*, No. 11-CV-0293, 2015 WL 1433299, at *14 (S.D.N.Y. Mar. 30, 2015)  In a case involving prison officials' failure to protect an inmate, information regarding what defendants knew and when they learned of that information is "a matter peculiarly reserved to their memories and files." *Brown v. Budz*, 398 F.3d 904 (7th Cir. 2005).[1]

### I.   Plaintiff Has Alleged An Eighth Amendment Claim Against Defendants.

Because "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society,' " prison officials have a duty to protect prisoners from violence at the hands of other prisoners.  *Farmer v. Brennan*, 511 U.S. at 833–34 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  In *Farmer*, the Supreme Court reversed a lower court's dismissal of a transgender prisoner's claim that her Eighth Amendment rights were violated when she was raped by another prisoner. *Id.* The Court announced the test for determining whether prison officials can be held liable for the harms inflicted by other prisoners.  *Id. Farmer's* two part test requires plaintiffs to first show the deprivation was objectively "sufficiently serious" and then to show that defendants acted with a "sufficiently culpable state of mind."  *Farmer*, 511 U.S. 825 at 837.  The state of mind required to show deliberate indifference is "more than negligence but less than conduct undertaken for the very purpose of causing harm."  *Id.*  Defendants do not dispute that Ms. Manning was subject to an objectively "substantial risk of serious harm," so this opposition addresses only her allegations that Defendants had adequate awareness of that risk.  *See* Defs' Mem. at 8; *Farmer* at 834.

---

[1] In support of their assertion that Plaintiff's factual allegations made upon information and belief should be discounted, Defendants' cite to a case involving a fraud cause of action, which must satisfy the heightened pleading requirement of Fed. R. Civ. Proc. 9(b).  *See JBCHoldings NY, LLC v. Pakter*, 931 F. Supp. 2d 514, 531 (S.D.N.Y. 2013); Defs' Mem. Law Supp. Mot. Dismiss ("Defs' Mem.") at 7, 13, 15, 19.  Unlike Rule 8 pleading, cases falling under Rule 9(b) must be pleaded with particularity and allegations may typically not be made on information and belief.  *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1247 (2d Cir. 1987).  Thus, Defendants argument regarding information and belief pleading is inapposite.

A. **Under _Farmer's_ Deliberate Indifference Standard, Plaintiff Has Pleaded Ample Facts in Support of Defendants' Subjective Awareness That She Was Subject to a Substantial Risk of Harm.**

_Farmer_ and cases in this circuit interpreting it make clear that a plaintiff can plead and prove prison official defendants' subjective awareness of a risk of harm in a multitude of ways, and that there is no expectation that they do so with direct evidence of a prison official's awareness of the very harm that ultimately befalls the plaintiff.  To plead or prove deliberate indifference, a prisoner need not show that the prison official knew of the _specific_ harm likely to occur and that the harm would come from the specific prisoner who committed it.[2]  _Farmer_ at 843; _see also Hayes v. New York City Dep't of Corr._, 84 F.3d 614, 621 (2d Cir. 1996) (holding that deliberate indifference finding does not require defendants to have known of _the_ specific risk of harm but of _a_ substantial risk of harm); _Warren v. Goord_, 579 F. Supp. 2d 488, 495 (S.D.N.Y. 2008) _aff'd_, 368 F. App'x 161 (2d Cir. 2010) ("The knowledge prong of the inquiry does not require awareness of the specific risk to the plaintiff or from the assailant."); _Corbett v. Kelly_, No. 97-CV-0682 E, 2000 WL 1335749, at *4 (W.D.N.Y. Sept. 13, 2000).  Nor does it matter to the deliberate indifference analysis whether the risk of harm derives "from a single source or multiple sources" or whether the risk faced is personal to the prisoner or exists as to a certain class of prisoners.  _Farmer_ at 843.  Further, an official who "merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist," can be found to be deliberately indifferent. _Farmer_ at 843 n. 8.

The fact that a prison official had the requisite knowledge can be shown by inferences drawn from circumstantial evidence.  _Farmer_ at 842.  Indeed courts have recognized that "[d]irect

---

[2] Defendants state that a plaintiff "'must allege that defendants knew of a prior altercation between the plaintiff and his attacker or of threats that had been made against plaintiff.'" This directly contradicts the Supreme Court's decision in _Farmer_, which states that there is no particular requirement as to how deliberate indifferent can be shown, as long as plaintiff can show that defendants were deliberately indifferent to a serious risk. _Farmer_ at 843.

evidence that prison officials knew of and disregarded a serious risk of harm to a prison inmate will rarely be available." *Matthews v. Armitage,* 36 F.Supp.2d 121, 125 (N.D.N.Y. 1999); *see also Dublin v. New York City Law Dep't*, No. 10 CIV. 2971 LAP, 2012 WL 4471306, at *5 (S.D.N.Y. Sept. 26, 2012).  The obviousness of a risk itself is evidence from which an inference of knowledge may be drawn.  *Farmer* at 832. ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.")

Plaintiff does not, as Defendants assert, claim that Defendants *should* have known of the risk of harm; she claims that they did know.  The facts alleged in the Complaint include direct and circumstantial evidence, including evidence of the obviousness of the risk.  These facts allege that the risk derived from multiple sources and that each defendant knew of multiple sources of risk of harm to Ms. Manning.  Among these sources of risk of harm that Plaintiff alleges were known to Defendants are the fact that Ms. Manning was a transgender woman housed in a men's prison, that there was inadequate supervision in the program area where she was raped, that her assailant had a previous history of sexually violent behavior and that plaintiff's counsel and other advocates wrote to prison officials notifying them of her vulnerability and risk of harm. Plaintiff's allegations show that each of these sources provide evidence of Defendants' awareness of the risk of harm to Plaintiff.  The facts alleged, as demonstrated below, more than amply plead a claim under the Eighth Amendment for deliberate indifference.

1. **Plaintiff Has Alleged Facts in Support of Defendants' Awareness That She is Transgender and of the Risks Inherent in Housing a Transgender Woman in a Men's Maximum Security Prison.**

Under *Farmer*, a plaintiff may show the existence of a substantial risk of serious harm because of a personal trait of the plaintiff's or because of her membership in an identifiable class that is particularly vulnerable to harm.  *See Farmer*, 511 U.S. at 843.  Pleading facts, as Ms.

Manning did, that indicate prison officials' awareness of a plaintiff's membership in a group disproportionately vulnerable to attack can alone support a failure to protect claim. *Lojan v. Crumbsie,* No. 12 CV 0320, 2013 WL 411356, at *4 (S.D.N.Y Feb. 1, 2013).  In refusing to dismiss a failure to protect claim, the *Lojan* court characterized defendants' argument that their knowledge of plaintiff's transgender status did not put them on notice of her vulnerability as "spurious." *Id.* at *4. (citing *Powell v. Schriver,* 175 F. 3d 107, 115 (2d. Cir.1999); *see also Clinton v. De La Cruz,* No. CV 08-4181-DOC OP, 2012 WL 1247142, at *6 (C.D. Cal. Mar. 7, 2012) *report and recommendation adopted,* No. CV 08-4181-DOC OP, 2012 WL 1246584 (C.D. Cal. Apr. 11, 2012) (refusing to dismiss deliberate indifference claim where plaintiff's gender non-conformity was one source from which defendants drew inference that plaintiff was at substantial risk) .  Similarly, the Second Circuit held that a prisoner had a constitutional right to privacy in her transgender status because "in the sexually charged atmosphere of most prison settings," disclosure that a prisoner is transgender "might lead to inmate-on-inmate violence." *Powell v. Schriver* 175 F.3d 107, 113 (2d Cir. 1999).  The *Powell* Court also denied qualified immunity to the prison official defendants with respect to the plaintiff's Eighth Amendment deliberate indifference claim because even in 1991, it was clear that disclosure of her transgender status "could constitute deliberate indifference to a substantial risk that such inmate would suffer serious harm at the hands of other inmates." *Id*. at 115.

Plaintiff pleads ample facts supporting Defendants' knowledge that she was transgender. Am. Compl. ¶¶ 15-24.  The Complaint enumerates the sources of Defendants' knowledge that she is a transgender woman such as her female name and her feminine appearance, due in part to the female hormones and androgen blockers DOCCS has provided her to feminize her body. *Id*. at ¶¶ 14-21.  Her outward appearance placed all Defendants on notice that she was a frail

transgender woman.  She had breasts, wore a bra, and grew her hair long.  *Id.* at ¶¶ 22, 63, 64. She also appeared physically frail due to her chronic illnesses.  *Id.* at ¶¶ 13, 55.

Moreover, Plaintiff pleads facts supporting the inference that the risk to transgender women housed in men's maximum security prisons was well known to Defendants and obvious. *See Farmer*, 511 U.S. at 842.  The Second Circuit's recognition in 1999 of the "sexually charged atmosphere" in most male prisons and the risk of violence by other prisoners faced by transgender prisoners indicates that the risk of harm to Ms. Manning was obvious.  *See Powell v. Schriver* 175 F.3d at 113.  Furthermore, Plaintiff has alleged numerous facts in support of the contention that the risk of sexual violence to a transgender and frail woman in a men's maximum security prison was well-known and obvious to Defendants at the time of her rape.  Am. Compl. ¶¶ 51-59.  Plaintiff references the 2003 PREA and the PREA Commission's 2009 report laying out recommendations to corrections administrators for protecting vulnerable populations and noting that "research on sexual abuse in correctional facilities consistently documents the vulnerability of… transgender individuals." *Id.* at ¶ 52.  The Complaint also notes other large scale national studies documenting the significantly elevated risk of sexual assault in prison faced by transgender individuals.  *Id.* at ¶¶ 54, 57.  While a court could certainly infer that reports and studies by a Congressional Commission and the U.S. Department of Justice aimed at corrections officials were known to Defendants, this Court need not do that here where these studies clearly evince the obviousness of the risk to transgender women in men's prisons. Furthermore, the Complaint mentions a 2007 DOCCS-specific report authored by the Sylvia Rivera Law Project detailing the violence experienced by transgender women in DOCCS prisons.  *Id.* at ¶¶ 55, 56.  This Complaint was provided to the DOCCS Commissioner and DOCCS superintendents and also indicates the obviousness of the risk.  *Id.* at ¶ 55.

The *Powell* and *Lojan* decisions were based on this obvious risk.  *See Powell*, 175 F.3d at 113; Lojan, 2013 WL 411356, at *4.  Defendants seek to distinguish the *Lojan* decision from this case because the *Lojan* plaintiff was in protective custody ("PC") upon disclosing to officials that she was transgender.  Defs' Mem. at 12.  This attempt fails for two reasons.  First, the *Lojan* court stated that "*mere* knowledge" that plaintiff was transgender was sufficient to place the defendant on notice of the risk of harm; irrespective of any other facts evincing a risk to plaintiff, knowledge of her being transgender was enough.  *See Lojan* at *4 (emphasis added).  Second, that Lojan was in PC did not provide additional factual support for defendant's awareness of the risk because the *sole* reason she was placed in PC was because she was transgender.  Nothing in the decision or record suggests that Lojan notified defendant of a risk or that defendant knew of any risk aside from her gender identity.  In fact, the decision states that she was placed in PC after identifying herself as a preoperative transgender female with breasts during intake.  *Id* at *1.  The booking report stated that she was "placed on PC due to being trans gender as per Sgt Luisi." *Lojan v. Crumbsie*, No. 12 CV. 0320 LAP, Docket Entry 143-2.  Defendants' argument relying on this fact to distinguish *Lojan* from this case is thus completely circular.

### 2. Plaintiff Has Alleged Facts in Support of Defendants' Awareness of the Lack of Security in Sublevel E.

Lack of adequate correctional supervision within a prison can also constitute deliberate indifference under the Eighth Amendment.  *See Taylor v. Zerillo*, No. 08-CV-1494, 2008 WL 4862690, at *4. (E.D.N.Y Nov. 10, 2008) (upholding failure to protect claim where plaintiff alleged warden failed to correct security deficiencies where inmate-on-inmate assault occurred).  In *Taylor*, the court held that allegations regarding the warden and correctional supervisor's knowledge of the short staffing of the facility supported plaintiff's claim of deliberate indifference.  *Id*.  Similarly, a failure to protect claim was upheld as to correctional staff and

supervisors on allegations that the on-duty officer could not see or hear the prisoners in their housing and common areas from his post and did not conduct regular rounds. *See Solivan v. Dart*, 897 F. Supp. 2d 694, 698, 704 (N.D. Ill. 2012).   Furthermore, leaving a particularly vulnerable prisoner in an unmonitored area of the prison with prisoners known to be violent can constitute deliberate indifference. *See Walton v. Dawson*, 752 F.3d 1109, 1121 (8th Cir. 2014).

Plaintiff has sufficiently pleaded facts showing that Sublevel E was poorly monitored and that Defendants were aware of the lack of staffing and monitoring of this isolated area of the prison.  The Complaint states that the correctional officer who was responsible for patrolling the area and providing security, Defendant Ladenhauf, rarely did so and that sometimes he would show up in the morning, sign the log book and never return.  Am. Compl. ¶¶10, 26.  She alleges that on the day of the rape the only employee present in the sublevel area was Defendant Cohen, a program instructor, and that no security staff were present.  *Id.* at ¶¶ 11, 28.  Ms. Manning alleges that prior to being raped she told Defendant Cohen about the lack of security in the sublevel and that the area remained unlocked so that prisoners could easily enter and exit.  Am. Compl. ¶ 26.  Furthermore, the sublevel was used for sex offender meetings.  *Id.* at ¶ 25.

Defendants' contentions notwithstanding, the fact that Ms. Manning did not file a grievance about nor request reassignment from the isolated and unmonitored sublevel is by no means determinative.  *See* Defs' Mem. at 15.  The issue in a failure to protect case is not whether the plaintiff informed defendants of the risk of harm but whether they were sufficiently aware of that risk.  *Hayes v. New York City Dep't of Corrections,* 84 F.3d 614, 621 (2d Cir.1996).  As Plaintiff demonstrates *infra*, each Defendant was aware of the lack of security provided in the sublevel where Ms. Manning was raped.  The source of that knowledge, whether Ms. Manning or otherwise, is irrelevant.  Defendants wrongly rely on *Fernandez v. New York City Dep't Corrections*, No. 08 CV 4294(KMW), 2010 WL 1222017, at *4 (S.D.N.Y. Mar. 29, 2010) for

the proposition that facts alleging that a jail area was unmonitored cannot support a claim of deliberate indifference.  Defs' Mem. at 16.  In *Fernandez*, the court dismissed a deliberate indifference claim where the plaintiff's only allegation concerning knowledge was that the dorm officer was temporarily away from her post.  *Fernandez* at *4.  However, in that case, the plaintiff did not allege any other facts supporting the defendants' knowledge of the risk, nor did the *pro se* plaintiff file any opposition to the motion to dismiss.  *Id*. at *2, *4.  Furthermore, as other cases, including *Taylor v. Zerillo*, *Solivan v. Dart*, and *Walton v. Dawson* make clear, lack of adequate security known to defendants can constitute deliberate indifference.  *See supra* at 11-12.  The Amended Complaint amply pleads facts in support of such a claim.[3]

### 3.  Plaintiff's Allegations of Facts Evincing Defendants' Knowledge of Ernest William's Violent Disposition Supports Her Claim of Deliberate Indifference

Prison officials' knowledge of an inmate's violent history can also support deliberate indifference claim.  *See, e.g., Lojan v. Crumbsie*, 2013 WL 411356, at *4 (S.D.N.Y. Feb. 1, 2013)*.  In addition to finding that allegations of defendants' knowledge of plaintiff's transgender status were of enough to make out a failure to protect claim, the *Lojan* court found that allegations of the inmate-attacker's history of violence further supported plaintiff's pleading of deliberate indifference.  *Lojan* at *4.  "Deliberate indifference may also be predicated on the custodians' knowledge of an assailant's predatory nature" irrespective of whether the plaintiff has notified defendants of the threat or whether those custodians knew who was likely to be attacked.  *Brown v. Budz*, 398 F.3d 904, 915-16 (7th Cir. 2005).

Ms. Manning's Amended Complaint states that Defendants were aware of Ernest Williams' history as a sexual predator.  She alleges that Williams was transferred to Sullivan after having

---

[3] Defendants also contend that Ms. Manning's allegation that the sublevel was used for sex offender meetings is a "red herring" because she does not allege that her attacker was a convicted sex offender. Defs' Mem. at 16. While Plaintiff does not assert that this fact is important to her claim, it does exemplify Defendants' deliberate indifference. Ms. Manning also alleges her attacker was at Sullivan *because* he was a sexual predator. Am. Compl. ¶¶ 44-48.

sexually assaulted a prisoner at another prison.   Am. Compl. ¶¶ 44, 48.   She alleges that despite their knowledge that Williams was a sexual predator, Defendants allowed him to live in the same general population housing block and occupy the unmonitored program area where she worked. Am. Compl. ¶¶ 24, 47.   She also alleges that Williams sexually assaulted another prisoner at Sullivan before raping Ms. Manning.   *Id.* at ¶ 49.   These allegations support an inference that allowing Williams to be placed in an isolated program area with a frail, transgender woman, placed her at a serious risk of harm and thus could amount to deliberate indifference.   As argued below, Defendants Griffin and Giglio were aware of Mr. Williams' history of sexual violence.

### 4. Plaintiff Alleged That Defendants' Were Put on Notice by Plaintiff's Counsel and Other Advocates of Ms. Manning's Vulnerability.

Notification of prison officials that a prisoner faces a substantial risk of harm can also constitute evidence of deliberate indifference.  *See Sims v. Bowen*, No. 96-CV-656 RSP/DRH, 1998 WL 146409, at *2 (N.D.N.Y. Mar. 23, 1998).  At the pleading stage, a prisoner is entitled to the inference that a letter to prison officials regarding a risk of harm to a prisoner placed that official on notice of that risk.  *Grullon v. City of New Haven*, 720 F.3d 133, 141 (2d Cir. 2013). Such a letter notifying officials of a prisoner's susceptibility to violence need not provide notice of the specific harm that ultimately occurs.  *See Hayes v. New York City Dep't of Corr.,* 84 F.3d 614, 621 (2d Cir. 1996) (finding that whether plaintiff notified defendants of specific source of harm was the relevant deliberate indifference inquiry); *Candelaria v. Coughlin*, No. 93 CIV. 3212 (RWS), 1997 WL 171256, at *10, n. 1 (S.D.N.Y. Apr. 10, 1997) ("However, the issue is not whether Candelaria identified the risk posed by a particular potential assailant, but whether the defendants were aware of a substantial risk of harm to the [sic] him.").

Plaintiff's Amended Complaint details instances where advocates contacted DOCCS officials, including Defendants, on her behalf to inform prison officials that Ms. Manning was at

risk of sexual violence.  Plaintiff's co-counsel, the Cornell LGBT Clinic, wrote to Defendant Griffin on December 18, 2012, prior to the rape, and informed him of incidents during which staff harassed and abused Ms. Manning.  Am. Compl. ¶ 62-68.  The letter informed Griffin that one officer squeezed her breasts and screamed at her, causing her great emotional and physical distress.  *Id.* at ¶ 64.  The letter also informed him of another incident in which Ms. Manning was similarly sexually assaulted.  *Id.* at ¶ 63.  Furthermore, the letter stated that Plaintiff feared that the gender-identity based harassment and abuse to which she was subjected would worsen and result in violence.  *Id.* at ¶ 66.  The Complaint also states that advocates from the Sylvia Rivera Law Project also wrote to DOCCS to explain the dangers faced by Ms. Manning as a transgender woman in male prisons and that these letters remained in her prison file. *Id.* at ¶¶ 23, 60.

These allegations provide adequate factual support at the pleading stage to show that the letters written on Ms. Manning's behalf notified prison officials that she faced a gender-based risk of harm.  That these letters did not identify Mr. Williams or any particular person as her potential attacker does not render them irrelevant.  *See Hayes*, 84 F.3d at 621.  They adequately made clear that Ms. Manning faced a serious risk of harm because she is transgender.

## II.    **Plaintiff Has Alleged Ample Facts Showing That Each Defendant Was Deliberately Indifferent to a Risk of Serious Harm to LeslieAnn Manning.**

A plaintiff suing under § 1983 must show each defendant's personal involvement in the constitutional violation in order to establish liability.  *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013). In a failure to protect case, a plaintiff can demonstrate that a defendant was personally involved simply by showing defendant was aware of her plight and could have taken steps to protect her, but failed to do so.  *Haywood v. Woods*, No. 9:01CV0022, 2007 WL 1834641, at *10 (N.D.N.Y. June 25, 2007).  Indeed, "this is the very essence of an Eighth Amendment failure to protect claim."  *Id.*  "Even a one-line statement that defendants had actual

knowledge of the alleged conditions may be sufficient to defeat defendants' motion to dismiss, if the alleged facts make such knowledge plausible." *D'Attore v. New York City*, 2011 WL 3629166 *2 (2011)  Even a supervisory official who was aware of a serious risk of harm to an inmate and fails to abate the risk was directly involved in violating her constitutional right to be free of cruel and unusual punishment. *See Turkmen v. Hasty*, 789 F.3d 218, 250 (2d Cir. 2015).

The Second Circuit has held that supervisory defendants are personally involved in a constitutional violation when they meet just one of five factors: they participated directly in the violation; they failed to correct it after having been informed of it; they created or allowed the continuance of a policy or custom under which the violation occurred; they were grossly negligent in supervising subordinates; or they exhibited deliberate indifference by failing to act on facts suggesting a constitutional violation.  *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995).  In a deliberate indifference case, the first *Colon* factor (direct participation) and the fifth (deliberate indifference) are the same. *See Turkmen v. Hasty*, 789 F.3d at 250.

In this case, each Defendant was deliberately indifferent to a known risk of harm to Ms. Manning.  As such, they participated directly in the violation of her rights. The Amended Complaint also alleges sufficient facts to show that supervisory defendants Griffin, Giglio, and Barlow also met other *Colon* factors. Griffin and Giglio aware of a policy or custom of leaving Sublevel E dangerously unsupervised, but allowed it to continue, satisfying the third *Colon* factor. *See infra § II(A).*  Griffin, Giglio, and Barlow were also grossly negligent in supervising subordinates who committed wrongful acts, satisfying the fourth *Colon* factor. *See infra § II(A).*

The *Iqbal* decision did not nullify the *Colon* factors; *Iqbal* addressed intent-based constitutional claims, specifically racial discrimination, and in that context held that a supervisor's mere knowledge of his subordinate's discriminatory purpose was in sufficient to support a finding that the supervisor violated the Constitution. *Ashcroft v. Iqbal*, 556 U.S. 662,

676-7 (2009).   But in cases like this one, "where the claim does not require a showing of discriminatory intent, the personal-involvement analysis set forth in *Colon* should still apply." *D'Attore v. New York City*, No. 10 CIV. 3102 JSR MHD, 2011 WL 3629166, at *10 (S.D.N.Y. June 2, 2011) *report and recommendation adopted as modified*, No. 10 CIV. 3102 JSR MHD, 2011 WL 3629018 (S.D.N.Y. Aug. 17, 2011); *see also Qasem v. Toro*, 737 F.Supp.2d 147, 151–52 (S.D.N.Y.2010); *D'Olimpio v. Crisafi*, 718 F.Supp.2d 340, 346–47 (S.D.N.Y.2010); *Sash v. United States*, 674 F.Supp.2d 531 (S.D.N.Y.2009).   Moreover, because the Second Circuit has not limited *Colon*, the district courts should continue to apply all five factors.   *Daniels v. Murphy,* No. 3:11-CV-00286 SRU, 2014 WL 3547235, at *4 (D. Conn. July 17, 2014).   In this case, since each defendant directly participated in the alleged constitutional violation, this Court need not reach the question of *Colon's* continued vitality to find they were personally involved.

A.        **Defendant Patrick Griffin**

Defendant Griffin's knowledge of the substantial risk to Ms. Manning derived from multiple sources, and yet, as alleged in the Complaint, he took no steps to remediate that risk. As Superintendent of Sullivan, Defendant Griffin was "directly responsible for enforcing general security policies and authorizing and managing the policies, procedures, and customs governing day-to-day security." Am. Compl. ¶ 7.   He was responsible for the "assignment and removal of staff, the training of staff, and the supervision of staff and prisoners to ensure a safe environment." Id.   Griffin "oversaw the day-to-day operation of that facility and was responsible for the safety and security of all inmates."  *Id.*

Like all the Defendants, Griffin knew Ms. Manning was transgender. Supra §I(A)(1). Am. Compl. ¶14, 16, 17, 18 and 22.   Griffin knew that Ms. Manning was at risk of sexual assault because the risk was obvious. *See supra* §I(A); *Powell v. Schriver* 175 F.3d at 113; *Lojan v. Crumbsie,* , 2013 WL 411356, at *4.   He was also personally notified of threats to Ms.

17

Manning's safety. Both Ms. Manning and the Cornell LGBT Clinic wrote to Griffin after correctional officers sexually harassed her on October 31 and November 1, 2012, Am Compl. ¶¶ 63-66, and he responded to the letter from the Cornell LGBT Clinic. *Id.* at ¶ 67. These letters were sufficient to notify Griffin that Ms. Manning faced a gender-based risk of harm as transgender person. *See supra* §I (A)(4). Superintendent Griffin was also "on notice of the particular dangers transgender females face when housed in male facilities like Sullivan," Am Compl. ¶ 60, because the Sylvia Rivera Law Project had sent him "numerous letters" concerning the risk of sexual violence and victimization transgender women face in men's prisons. *Id.* Ms. Manning's file was "replete with paperwork" including letters from legal advocates "detailing the risks she faces as a transgender prisoner" when she arrived at Sullivan. Am. Compl. ¶ 23. At this early stage, having alleged that this information was in her file when she arrived at Sullivan, Ms. Manning is entitled to have this Court draw a reasonable inference that Griffin received the file, read the records, and was aware that Ms. Manning was a transgender woman at high risk of sexual assault. *See Grullon v. City of New Haven*, 720 F. 3d 133, 141 (2nd Cir. 2013).

It is also reasonable to infer that Griffin knew the history of Ms. Manning's rapist, Ernest Williams, prior to his arrival at Sullivan. Williams was transferred to Sullivan *because* he had sexually assaulted another prisoner at another prison. Am. Compl. ¶¶ 44, 48. He was a known sexual predator who "had a reputation of engaging in threatening and harassing behavior." *Id.* at ¶¶44-45. Griffin's responsibilities included "the supervision of staff and prisoners to ensure a safe environment." *Id.* He "oversaw the day-to-day operation of that facility and was responsible for the safety and security of all inmates." It is therefore reasonable to infer that he was aware of Williams' history of sexual predation, and yet he allowed Williams to be placed in the same block and program area as Ms. Manning. Despite knowing that Ms. Manning faced a serious risk of harm as a medically frail transgender woman prisoner placed in the same block as the known

sexual predator who raped her, Defendant Griffin failed remediate that risk.   He thus "participated directly in the alleged constitutional violation". *Colon v. Coughlin*, 58 F.3d at 873.

Defendant Griffin also meets the third *Colon* factor, because he "created a policy or custom under which unconstitutional practices occurred" or allowed that policy to continue. *Id.* Defendants had a "practice of allowing prisoners to roam around an inadequately monitored sublevel," Am. Compl. ¶ 71, and Griffin "knew about the routine lack of adequate supervision in the sublevel area where Ms. Manning was raped," (*id. at ¶* 60) because he "authoriz[ed] and manag[ed] the policies, procedures, and customs governing day-to-day security." *Id.* at ¶ 7.   Yet Griffin failed to take any steps to remedy the dangerous situation.   Like the warden in *Taylor* who "knew D Block was short-staffed but failed to adjust staffing levels," Griffin was directly involved in the deprivation because he "was the author of a policy which 'foster[ed]' the violation at issue." *Taylor v. Zerillo*, 2008 WL 4862690, at *4 (E.D.N.Y. Nov. 10, 2008).

Finally, Defendant Griffin had the requisite personal involvement because he was grossly negligent in supervising subordinates who caused the violation, the fourth *Colon* factor.   *See Colon v. Coughlin*, 58 F.3d at 873 .   When Ms. Manning and her attorneys wrote to Defendant Griffin to complain that she was at risk of sexual assault, he informed them Defendant Urbanski was charged with investigating the incidents of sexual harassment at Sullivan.   Am. Compl. ¶ 67. Yet Griffin "did not indicate any steps the facility had taken or would be taking to ensure Ms. Manning's future safety, nor were any such steps taken." *Id.*   The Complaint thus alleges that Defendant Griffin was grossly negligent in supervising his subordinate Urbanksi, who failed to protect Ms. Manning or remove the serious risk of sexual assault that she faced.   This also demonstrates that Griffin was personally involved in the deprivation of Ms. Manning's rights.[4]

---

[4] Defendants cite *Rush v. Fischer* to support their argument that Defendant Griffin was not personally involved because he referred the letters to Defendant Urbanski.   Defs' Mem. at 14 (citing *Rush v. Fischer*, 923 F. Supp. 2d

*See Colon,* 58 F.3d at 873; *Williams v. Smith,* 781 F.2d 319, 323-324 (2d Cir.1986), *Corbett v. Kelly*, No. 97-CV-0682 E, 2000 WL 1335749, at *5 (W.D.N.Y. Sept. 13, 2000).

### B. <u>Defendant Dennis Giglio</u>

Defendant Giglio was aware that Ms. Manning was at risk of sexual assault because she was a transgender woman assigned to work in a dangerous, unsupervised area occupied by a known sexual predator. Yet he took no action to ameliorate the serious risk of harm she faced.

As the Deputy Superintendent for Security at Sullivan, Defendant Giglio was "responsible for the supervision of staff and prisoners to ensure a safe environment, including the enforcement of DOCCS rules and regulations. Giglio was also responsible for decisions concerning assignment of staff." Am. Compl. ¶ 8. Like the other Defendants, he knew that Ms. Manning was a transgender woman. See *supra* §I (A)(1); Am. Compl. ¶¶ 14- 18, 22. It is reasonable to infer he knew Ms. Manning was at risk of sexual assault because the risk was obvious. *See supra* §I (A), *Powell v. Schriver* 175 F.3d at 113; *Lojan v. Crumbsie,* 2013 WL 411356, at *4. Defendant Giglio was also "informed of the especially dangerous situation of transgender female prisoners housed in male facilities, like Sullivan. . . [because] he was aware of the letters and advocacy requests . . . alerting the prison to these risks." Am. Compl. ¶ 61.

Defendant Giglio "was aware of [rapist] Williams' history of sexual assaults." Am. Compl. ¶ 61. Williams was transferred to Sullivan *because he had committed a sexual assault* at Woodbourne Correctional Facility. Am. Compl. ¶ 48. He was a known sexual predator who "had a reputation of engaging in threatening and harassing behavior." Am. Compl. ¶¶ 44-45. At

---

545 (S.D.N.Y. 2013)). However, the *Rush* court found that allegations that two supervisory defendants received letters and sent them on to appropriate staff is "alone" not sufficient to establish personal involvement. *Id.* at 552. Here, Plaintiff does not base Griffin's personal involvement solely on receipt of these letters. Furthermore, unlike the defendants in *Rush*, who were the DOCCS Commissioner and Deputy Commissioner, Griffin, as Sullivan Superintendent, was directly responsible for security at his institution. *See id.* at 548.

this early stage, having alleged that DOCCS officials transferred Williams to Sullivan because he had committed a sexual assault at another prison, Ms. Manning is entitled to have this Court draw the reasonable inference that Giglio, the Deputy Superintendent for Security at Sullivan who was "responsible for the supervision of staff and prisoners to ensure a safe environment, including the enforcement of DOCCS rules and regulations" was aware of William's history of sexual predation. *See* Am. Compl. ¶¶ 8, 48; *Grullon v. City of New Haven*, 720 F. 3d at 14.

Defendant Giglio also knew that the sublevel where Ms. Manning was assigned to work was dangerously unsupervised. As the Deputy Superintendent "responsible for decisions concerning assignment of staff," Giglio was aware that only one officer was responsible for patrolling the area. Am. Compl. ¶ 8. Despite being responsible for assigning sufficient staff to ensure the security of the facility, Defendant Giglio failed to ensure the sublevel area was properly staffed. As a result, when Ms. Manning was raped in the isolated and unmonitored sublevel, the only employee in the area was a program instructor; no security staff was present. *Id.* In failing to ensure that the sublevel was properly staffed and patrolled, Defendant Giglio was not only personally indifferent to a known risk of harm, he also "created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom," and was "grossly negligent in supervising subordinates who caused the violation." *See Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995), *Taylor v. Zerillo*, 2008 WL 4862690, at *4.

Defendant Giglio knew that Ms. Manning was extremely vulnerable to sexual assault, and that she was housed in the same block as Williams, a known sexual predator. Yet he left Ms. Manning in an isolated, unsupervised area with no security oversight and failed to ensure his subordinates properly secured the area. The Complaint therefore states sufficient facts to demonstrate Defendant Giglio's personal involvement in depriving Ms. Manning of her rights.

### C.  Defendant Stephen Urbanski

Defendant Urbanski was also personally involved in the deprivation of Ms. Manning's rights. As Captain at Sullivan, Defendant Urbanski was "responsible for overseeing sergeants and correctional officers and for investigating and responding to prisoners' complaints, including complaints regarding safety concerns." Am. Compl. ¶ 9. Like the other Defendants, Urbanksi was aware that Ms. Manning was a transgender woman. *See supra* §I(A)(1); Am. Compl. ¶¶ 14-18, 22.  It is reasonable to infer that Defendant Urbanski knew Ms. Manning was at risk of sexual assault because the risk was obvious. *See supra* §I (A); *Powell v. Schriver* 175 F.3d at 113; *Lojan v. Crumbsie*, 2013 WL 411356, at *4.  Months before the rape occurred, Defendant Urbanksi was charged with addressing alleged incidents of sexual harassment that Ms. Manning had endured at the hands of corrections officers.  Am. Compl. ¶¶ 64-67.  Defendant Urbanski knew that Ms. Manning was a vulnerable transgender prisoner who feared sexual violence and was at serious risk of harm, yet he failed to take any steps to ameliorate it.  *See supra* §1(A)(4). The Complaint alleges sufficient facts to show that Defendant Urbanski was personally involved in violating Ms. Manning's rights. *Williams v. Smith,* 781 F.2d 319, 323-324 (2d Cir.1986), *Corbett v. Kelly*, No. 97-CV-0682 E, 2000 WL 1335749, at *5 (W.D.N.Y. Sept. 13, 2000).

### D.  Defendant Brian Barlow

Defendant Barlow was also aware that Ms. Manning faced a substantial risk of serious harm, and yet he disregarded the risk.  See *Farmer*, 511 U.S. at 834.  As such, he was personally involved in depriving Ms. Manning of her rights.  Like the other defendants, Barlow knew that Ms. Manning was a transgender woman. *See supra* §I(A)(1); Am. Compl. ¶¶ 14- 18, 22.  This Court can also infer that Barlow knew Ms. Manning was at risk of sexual assault as a transgender woman in a men's prison because it was obvious.  See *supra* §I (A).  As the Sergeant assigned to the program area including the sublevel where Ms. Manning was raped on February 5, 2013,

Barlow was "responsible for supervising the officers and prisoners in his area, [and] making sure that officers followed the rules and regulations and attended to their job duties." *Id*.  He was also responsible for "conducting rounds of the area and reading area log books to make sure they were being administered accurately." *Id*. Finally, Defendant Barlow was "responsible for making visual inspections of the area to ensure that prisoners were in compliance with rules and standards, behaving appropriately, safe and secure." *Id*.  The Complaint thus alleges sufficient facts to infer that Defendant Barlow knew that the sublevel where the rape took place was understaffed, unmonitored, and isolated because he "conducted rounds of the area", "read[] area log books" and "made visual inspections" of the sublevel.  *See Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001) (a plaintiff's allegation that corrections officers knew of conditions in a unit was not conclusory when premised on the assertion that they conducted rounds there.)  *Id*.

Given that Defendant Barlow knew that Ms. Manning was a transgender woman vulnerable to sexual assault assigned to a dangerous area with inadequate monitoring, he was deliberately indifferent to a known risk of serious harm.  As such, he was directly involved in the violation of Ms. Manning's rights.  Barlow was also grossly negligent in supervising subordinates who caused the violation because of his supervisory failure to ensure the area was properly staffed. *See Colon v. Coughlin*, 58 F.3d at 873 (2d Cir. 1995), *Taylor v. Zerillo*, 2008 WL 4862690, at *4.  Ms. Manning has thus demonstrated the personal involvement of Defendant Barlow.

### E.  Defendant Daniel Ladenhauf

Defendant Ladenhauf is a Correctional Officer assigned to Sullivan.  Like the other Defendants, Ladenhauf knew that Ms. Manning was a transgender woman.  *See supra* §I(A)(1); Am. Compl. ¶¶ 14- 18, 22.  He also knew Ms. Manning was at risk of sexual assault as a transgender woman in a men's prison because it was obvious.  *See supra* §I(A). It is also reasonable to infer that he knew Sex Offender program meetings took place in the sublevel

where Ms. Manning was raped because it was his job to patrol there.  *See* Am. Compl. ¶10, *Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001).

While Ladenhauf was supposed to patrol the area where Ms. Manning was brutally raped, he did not fulfill his responsibilities.  Am. Compl. ¶ 26.  Instead, he merely signed the logbook at approximately 9 a.m. to indicate he had walked through the area and then remained for only "a couple of minutes" before leaving the sublevel. *Id*.  Defendant Ladenhauf also "did not always return to patrol Sublevel E in the afternoon and thus did not always sign the logbook during afternoon hours." Am. Compl. ¶ 26.  As a result, when Ms. Manning was raped, Cohen, a civilian instructor, was "the only staff in the area at the time." Am. Compl. ¶ 28.  Ladenhauf was absent despite being the "primary member of the security staff responsible for patrolling and general security in Sublevel E." Am. Compl. ¶ 10.  He should have been present to prevent the brutal assault on Ms. Manning but he failed to show up.  He was thus directly involved in Ms. Manning's sexual assault.  See *Taylor v. Zerillo*, 2008 WL 4862690, at *4. (holding that an officer who should have been present to prevent an assault was a direct participant.)

### F.  Defendant Peter Cohen

Ms. Manning has also alleged sufficient facts to demonstrate Defendant Cohen's personal involvement.   Cohen was an instructor at Sullivan for prisoners with auditory and visual impairments, and Ms. Manning was assigned to work under him. He was thus "responsible for assigning Ms. Manning administrative and support tasks during working hours." Am. Compl. ¶ 11.  Like the other defendants, Cohen was aware that Ms. Manning is a transgender woman.  *See supra* §I(A)(1); Am. Compl. ¶¶ 14-18, 22.  Defendant Cohen also knew that Ms. Manning was vulnerable to rape as a transgender woman because it was obvious.  *See supra* §I (A).

Prior to the rape, Ms. Manning informed Cohen that prisoners could enter and exit the sublevel at will because the entrance was usually unlocked, as was the classroom where the rape

took place. Am. Compl.¶ 26.  Ms. Manning "told Cohen that there was not enough control over the area, as anyone could walk through." Am. Compl. ¶26.  Cohen was also aware of the dangerous lack of supervision in the sublevel because his office was located there.  Am. Compl. ¶ 28. Similarly, given the location of his office, it is reasonable to infer that he knew that the area was used for sex offender meetings. *See Gaston v. Coughlin*, 249 F.3d 156, 166 (2d Cir. 2001).

Despite knowing that Ms. Manning was a transgender woman vulnerable to rape and that the sublevel was a dangerous, unmonitored area, however, "Defendant Cohen still assigned Ms. Manning the task of bringing writing paper to a violent prisoner in an empty, unsupervised classroom," Am. Compl. ¶ 11, and Ms. Manning was brutally raped when she complied.  She has thus alleged facts demonstrating Cohen was personally involved in the deprivation of her rights.

## III.    If Ms. Manning's Claims are Dismissed Against any Defendant, it Should be Without Prejudice

Should this Court dismiss claims against any Defendant, the dismissal should be without prejudice.  When a complaint is dismissed for failure to allege adequate personal involvement, dismissal without prejudice is appropriate to allow plaintiff to file an amended complaint if she can allege further facts that would justify a cause of action.  *Watson v. McGinnis*, 964 F. Supp. 127, 130 (S.D.N.Y. 1997); *MacGillivray v. Whidden*, No. 3:04CV1523(CFD), 2006 WL 587593, at *4 (D. Conn. Mar. 10, 2006).  In this case, Ms. Manning has had no opportunity to conduct discovery concerning the individual defendants' involvement.  But assuming her claim survives against at least some defendants, she will be able to conduct discovery to determine pertinent facts regarding other defendants' conduct and to amend her Complaint accordingly.

## CONCLUSION

For the foregoing reasons, this Court should deny Defendants' Motion to Dismiss for failure to state a claim and for lack of personal involvement.

Dated: New York, NY
      July 31, 2015

                           _____/s/_____
                           BETSY GINSBERG, ESQ.
                           CARDOZO CIVIL RIGHTS CLINIC
                           Attorney for Plaintiff
                           Benjamin N. Cardozo School of Law
                           55 5th Avenue, 11th Floor
                           New York, NY 10003
                           (212) 790-0871
                           Betsy.ginsberg@yu.edu

                           SUSAN HAZELDEAN, ESQ.
                           CORNELL LGBT CLINIC
                           Attorney for Plaintiff
                           Cornell Law School
                           149 Myron Taylor Hall
                           Ithaca, NY 14853
                           (607) 254-4765
                           shazeldean@cornell.edu